**UNITED STATES of America, Appellant,**

v.

**Jack DAHLSTRUM, Appellee.**

**No. 80–1536.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1981.

Decided Sept. 8, 1981.

---

James P. Springer, Washington, D.C., for appellant.

Bruce I. Hochman, Beverly Hills, Cal., for appellee.

Before KILKENNY, FLETCHER and CANBY, Circuit Judges.

KILKENNY, Circuit Judge:

This is an appeal by the government from a judgment dismissing a three-count indictment with prejudice. Because reversal would necessitate a retrial barred by the double jeopardy clause, we dismiss the appeal.

### FACTUAL BACKGROUND [1]

The appellee was charged in a three-count indictment with willful failure to file individual income tax returns for the years 1973–1975, in violation of 26 U.S.C. § 7203. Following appellee's plea of not guilty, and waiver of trial by jury, the district court began hearing testimony on April 13, 1980.

During the presentation of the government's case, the court heard the testimony of Ostrove, an attorney who had represented appellee prior to this trial. Ostrove testified that after appellee's accountant had received an administrative summons to produce Dahlstrum's law partnership's accounting records, he had contacted an IRS special agent, Marc Schreiber, to discuss a possible civil settlement of appellee's delinquent taxes. Schreiber, the agent who had issued the summons, told Ostrove that he was not interested in the civil aspects of

1. The district court opinion, *United States v. Dahlstrum*, 493 F.Supp. 966 (C.D.Cal.1980), contains a detailed factual statement.

Dahlstrum's case. At that point, the trial judge became concerned that the IRS had abused its power by issuing a § 7602 summons in an investigation that had solely criminal purposes. *See United States v. La Salle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

The government called Special Agent Schreiber to the stand in an attempt to eliminate the judge's concern. Schreiber's testimony had the opposite effect. The judge grew increasingly disturbed over the events in question, and ordered the special agent's group manager, Sullivan, to appear and explain the IRS's practices and procedures. Sullivan was questioned almost exclusively by the trial judge, although at one point defense counsel asked the witness a few questions. Sullivan testified that, as an institutional practice, special agents issue § 7602 summonses before a cooperating revenue officer has been brought in on the case. On the basis of Sullivan's testimony, the judge orally dismissed the indictment against appellee because of governmental misconduct. The judge suggested that defense counsel prepare findings of fact and conclusions of law, and submit them to the court within 30 days. Defense counsel complied with this suggestion.

The district court formally entered its judgment on July 11, 1980, ordering, *inter alia*, that the indictment be dismissed with prejudice, and that the appellee be acquitted from all charges contained in the indictment. The district court did not adopt the defense counsel's findings of fact and conclusions of law. Rather, the court made its own decision, including findings and conclusions. The government appeals.[2]

## ISSUE

Although other issues are addressed by the parties, we hold that the issue of double jeopardy[3] is dispositive of the case.

## DISCUSSION

Appellee alleges that the double jeopardy clause bars this appeal, because (1) the ruling of the district court constituted an acquittal, (2) the termination of the trial was not the result of his voluntary choice, and (3) there was no "manifest necessity" for the termination of the trial. We need not decide whether the disposition below constituted an acquittal because we hold that this appeal is barred since appellee did not seek a termination of the trial on non-guilt related grounds.

■ It is fundamental that the government has no right of an appeal in a criminal case, absent explicit statutory authority. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *United States v. Scott*, 437 U.S. 82, 84–5, 98 S.Ct. 2187, 2190–91, 57 L.Ed.2d 65 (1978). 18 U.S.C. § 3731[4] authorizes appeals by the government except when the double jeopardy clause prohibits further prosecution. Congress, by enacting § 3731, intended to remove all statutory barriers to government

2. On the merits, the government contends that the district judge erred in dismissing the indictment. The government asserts that the IRS summons was not used improperly, and that even if it was appellee was not thereby entitled to dismissal. This latter contention is based on three arguments: (1) appellee waived such a claim by failing to raise it prior to trial, (2) appellee had no standing to challenge an IRS summons issued to a third party, and (3) dismissal was an inappropriate remedy because any "tainted" evidence (and the government contends that there was no such evidence introduced at trial) could have been suppressed. Because of our disposition of this appeal, if is unnecessary to comment on these contentions. We express no opinion on the government's claims, and this disposition should not be construed as an approval of the district judge's reading of *La Salle National Bank, supra,* and its progeny.

3. Appellant concedes that jeopardy had attached in the district court proceedings. *See Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975).

4. 18 U.S.C. § 3731 provides, in part: "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

appeals and to allow appeals whenever the Constitution would permit. *DiFrancesco, supra; United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1018–19, 43 L.Ed.2d 232 (1975).

■ The law attaches particular significance to an acquittal. The Supreme Court has held that the Constitution does not permit a judgment of acquittal to be appealed when a second trial would be necessary upon reversal. *DiFrancesco, supra; Scott, supra,* 437 U.S. at 91, 98 S.Ct. at 2194. A "defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' [*United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d (1977)]." *Scott, supra,* 437 U.S. at 97, 98 S.Ct. at 2197.

There is some evidence to support appellee's contention that the district judge's disposition constituted an acquittal. It is clear that the district judge had serious doubts as to whether the government had established its case beyond a reasonable doubt. Appellee calls our attention to the following colloquy between the court and the prosecutor:

"THE COURT: I know. But I haven't found anything so far, I must tell you. The evidence so far indicates lack of guilt, if you take the presumption of innocence together with the burden upon the government to prove each and every essential element of the crime charged and if you look at the cases which I point out to you requiring specific intent even in misdemeanor IRS cases, specific intent, which means voluntarily and intentionally and with specific intent to do something the law forbids with a bad purpose to disobey or disregard the law. I haven't found it beyond a reasonable doubt so far.

If you want to ask my opinion now, I'll tell you.

MR. KLUGER: Well, there are certain matters that I would venture to put before this Court that have been testified to that would indicate everything you have required; however, I don't know if it's my position at this time to elaborate on them.

THE COURT: This isn't the time for argument, but you suggest to me that I find him guilty, and that's a suggestion I find without merit at this stage."

In addition, the judge, when he orally dismissed the case with prejudice, stated: "Now, I don't think that any case can be made beyond what's been made, so I'm going to dismiss it with prejudice, and then it will be up to the government to do what they wish about it. I think that it's an appropriate dismissal." The judgment entered on July 11, 1980, states, in part: "Defendant is acquitted of and from any and all counts and charges contained in said indictment."

■ The judge's characterization of his actions, however, does not control. *Scott, supra,* at 96, 98 S.Ct. at 2196; *United States v. Gonzales,* 617 F.2d 1358, 1361 (CA9 1980), *cert. denied sub nom. Patel v. United States,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129. After reviewing the entire record, we cannot conclude, with any degree of certainty, that the district judge's disposition *actually represented* a resolution of any of the factual elements of the offense charged. The judge, in response to the contention that appellee had waived findings of fact, stated: "Yes. That's on the merits, but this is on another matter now. This is not on the merits that I'm deciding this case. It's on the question of governmental impropriety." The court's decision and order, filed on July 11, 1980, dealt exclusively with "governmental misconduct", and clearly stated that the dismissal was on that basis. Because of the lack of clarity in the record, we do not rest our holding on the district judge's "acquittal" of appellee.[5]

---

5.  Appellant also asserts that a resolution of any of the factual elements of the case would have been premature because it had not yet complet-

ed its case-in-chief. Appellant notes that it cut short its examination of special agent Schreiber when the judge made it clear that he was only

■ Because there does not appear to have been a resolution of the factual elements of the offenses charged, a reversal of the dismissal would clearly require additional proceedings. Appellee asserts that a retrial would violate the double jeopardy clause's prohibition against multiple prosecutions. The Supreme Court, however, has stated that a second prosecution does not offend the double jeopardy clause if "the defendant is *responsible* for the second prosecution." *Scott, supra*, 437 U.S. at 96, 98 S.Ct. at 2196. (Emphasis added). A "defendant, by *deliberately choosing* to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant." *Id.* at 98–99, 98 S.Ct. at 2197–98. (Emphasis added). This "exception" from the double jeopardy bar clearly contemplates a significant level of participation by the defendant in bringing about a termination of his trial prior to a determination on the merits. The Supreme Court in *Scott*, emphasized this by its descriptions of the sort of defense participation which removes any double jeopardy problem, *e. g.,* the defendant "elected to seek termination", made a "voluntary choice", "successfully avoided [a decision on the merits] . . . *by persuading the trial court to dismiss*", "undertook *to persuade the trial court not to submit the issue of guilt or innocence to the jury*", "obtain[ed] the termination", and "*[sought] to have the trial terminated.*" (Emphasis added). The Court stressed the importance of the defendant retaining "primary control over the course to be followed." *Id.* at 94, 98 S.Ct. at 2195 (quoting *United States v. Dinitz,* 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976)). In *Scott*, the defendant moved before trial and twice during for dismissal of two counts of the indictment on the ground that his defense had been prejudiced by pre-indictment delay. The trial court, at the close of all the evidence, granted the motion. The Court held that, because the defendant could be considered *responsible* for any reprosecution, the government's appeal was not barred by the double jeopardy clause.

■ Here, *the judge was the instigator and the primary mover of the events that led to the dismissal of the indictment. The record convinces us that the judge took complete control of the proceedings and set off on a course over which appellee had practically no control.* Nowhere does it appear that the judge, prior to the oral dismissal of the indictment, even consulted appellee on what course of action to take. For that matter, the judge's words and actions indicated that his primary concern was not with the case before him, but with the effect of his actions on future IRS investigations. The entire record indicates that the judge had no interest in completing the trial. Appellee's involvement in the termination of the trial was at best minimal and in no way reached the high degree of participation that was present in *Scott.* Nor can it be said that appellee retained "primary control" over the course of the trial. *Dinitz, supra,* at 609, 96 S.Ct. at 1080. For that matter, the record shows that he had no control over what was occurring. The mere fact that appellee's counsel complied with the judge's request to prepare findings of fact and conclusions of law prior to the formal entry of judgment is of no consequence. The transcript clearly shows that the judge did not believe the government had proved its case. In these circumstances, there is no doubt but that appellee wanted the judge to decide the case in his favor. Appellee certainly was not seeking to avoid a decision by the trier of fact. His

interested in the summons issue. Appellee asserts that the government did not have any additional evidence on the specific intent issue, and that, therefore, the judge's suggestion that he was not yet convinced that the government had met its burden of proof was the equivalent of a specific resolution of a factual element of the offense charged. Since we do not rely ultimately on the "acquittal" of appellee, we need not address whether a resolution of any of the factual elements of the offense would have been premature.

relatively passive role should not be taken to reflect anything beyond a keen appreciation of the fact that the judge had taken over the proceedings.

We do not believe that appellee can be considered *responsible* for the termination of his trial. He did not "voluntarily choose" to avoid submitting the case to the trier of facts on the merits, in the sense the Supreme Court described in *Scott*. We can find no persuasive justification for an expansive reading of *Scott*. In fact, the serious risks to double jeopardy clause values presented by multiple prosecutions caution against such a construction.

We conclude that appellee did not "seek" the termination of the trial and hold that his minimal participation did not fall within the rule stated in *Scott*.

### CONCLUSION

We conclude that even though the trial court's decision may not have been a factual determination of guilt or innocence, the government's appeal is barred by the double jeopardy clause because appellee did not "seek" the termination of his trial.[6] Consequently, the appeal is dismissed.

IT IS SO ORDERED.

---

6. Appellee, out of an abundance of caution, argued that there was no "manifest necessity" for the dismissal. *See Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The government does not argue that there was "manifest necessity", and, in fact, its argument that dismissal was unnecessarily severe is irreconcilable with a claim of "manifest necessity." Furthermore, although the Supreme Court has recently treated mistrials and dismissals similarly, we are not convinced that the "manifest necessity" analysis applies when a subsequent prosecution is not contemplated. In any event, the arguments of both parties convince us that it was not manifestly necessary to terminate the bench trial prior to a resolution on the merits. The judge, because of his desire to send the IRS "a message", did not consider available alternatives.