UNITED STATES of America,
Appellant,

v.

Arnaldo KENNINGS, Appellee.

No. 87–3488.

United States Court of Appeals,
Third Circuit.

Argued April 19, 1988.

Decided Oct. 31, 1988.

John F. De Pue (argued), U.S. Dept. of Justice, Washington, D.C., Terry M. Halpern, U.S. Atty., Hugh P. Mabe, Asst. U.S. Atty., U.S. Dept. of Justice, Charlotte Amalie, St. Thomas, Virgin Islands, for appellant.

Mario R. Bryan (argued), Charlotte Amalie, St. Thomas, Virgin Islands, for appellee.

Before SEITZ, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

The Government of the Virgin Islands appeals from the dismissal of a criminal information by the District Court of the Virgin Islands, *sua sponte,* but with the express consent of defense counsel, grounded upon the court's belief that the government had proceeded under a jurisdictionally inappropriate statute. Because the dismissal occurred after the attachment of jeopardy, the threshold question before us is whether the double jeopardy clause of the Fifth Amendment to the United States Constitution precludes our consideration of the appeal. Under the circumstances of the case, we hold that the double jeopardy clause is not offended by our consideration of the case.

In view of this determination, we must reach the merits and decide whether 18 U.S.C. § 201(c)(3) (Supp.IV 1986), which prohibits the solicitation of bribes by witnesses in exchange for either their testimony or their failure to testify, applies to witnesses appearing in criminal proceedings in the District Court of the Virgin Islands in which a defendant is charged with violating the Virgin Islands Code. For the reasons that follow, we hold that 18 U.S.C. § 201(c)(3) applies to that offense with which appellee has been charged. We will therefore reverse, and remand for trial.

## I.  PROCEDURAL HISTORY

On January 27, 1987, the Government of the Virgin Islands charged Doonath Sookram in a criminal information with grand larceny of various items of jewelry valued at approximately $400, in violation of V.I. Code Ann. tit. 14, § 1083 (1964). Appellee Kennings, a Virgin Islands corrections officer, was the victim of the alleged larceny.

On or about January 8, 1987, Kennings visited Sookram's parents and offered to "settle" the larceny case for a fee of $5,000. Mrs. Sookram stated that the money was not available, and reported the incident to the police. In February of 1987, Kennings told Mrs. Sookram that he would have the charges against Sookram dropped in exchange for a payment of $4,000. On March 11, 1987, Kennings further reduced his demand to $2,000. On March 15, 1987, in a conversation which was recorded and overheard by a Special Agent of the FBI, Kennings stated that he should receive $5,000 to settle the larceny case, but that in exchange for $2,000 in cash he would absent himself from any criminal proceedings against Sookram and the charges against

him would be dismissed.[1]

The trial in the larceny case was set for March 16, 1987. Kennings, however, failed to appear on that date. He then telephoned Mrs. Sookram, and inquired as to when he would receive his $2,000 payment. The two agreed that the money would be placed in the trunk of Mrs. Sookram's automobile, from which Kennings would retrieve it. On March 23, 1987, another F.B. I. agent placed a recorder and transmitter on Mrs. Sookram's person, and a bag of bait money in the trunk of her car. The agent then overheard and recorded a conversation in which Mrs. Sookram advised Kennings that the $2,000 payment was located inside a bank bag in the trunk of her car, which was parked in front of her residence. Kennings then approached Mrs. Sookram's automobile, opened the trunk, and removed the bag of bait money, at which time he was arrested.

On March 31, 1987, Kennings was charged in a criminal information with violating 18 U.S.C. § 201(c)(3). A trial by jury followed, in which the government completed the presentation of most of its case-in-chief on June 9, 1987. Shortly before the court recessed on that date, the judge evinced doubt as to whether 18 U.S.C. § 201(c)(3), which prohibits solicitation of bribes by a witness, was applicable to the case. He explained that, as he read the statute, "it applies only in courts of the United States ... and has absolutely no application in this case where a witness was to testify in a case brought in the name of the Government of the Virgin Islands." J.A. at 8–9.

The court reconvened the following day to hear oral argument on the question whether § 201(c)(3) applied to witnesses in territorial courts, which are Article I courts and not "courts of the United States." *See United States v. George*, 625 F.2d 1081, 1089 (3d Cir.1980).[2] The prosecutor argued

that the statute applied to the Virgin Islands prosecution, while Kennings' attorney contended that it did not. The district court agreed with Kennings, but expressed uncertainty and a desire to have the question resolved on appeal.

Discussion then turned to the issue of the permissibility, under the double jeopardy clause, of a government appeal should the district court dismiss the case because it found the statute inapplicable. The government voiced concern that since jeopardy had attached by reason of the empaneling of the jury, the dismissal of the case before the return of a verdict by the jury would jeopardize its ability to appeal. The government urged the court to postpone dismissal until the jury had rendered a verdict, reasoning that, were the jury to return a verdict of guilty that was subsequently set aside by the district court, the government's right to appeal would be preserved. Conversely, counsel for Kennings argued that, in light of the stress to which Kennings had already been subjected, and in light of the court's intention ultimately to dismiss the case, the court should not protract the proceedings to protect the government's right to appeal.

The district court concluded that it could not in good conscience prolong the case and charge the jury under a statute that the court believed did not apply. It therefore dismissed the information. The government's appeal followed.

## II.

We must first decide whether we have appellate jurisdiction. The Criminal Appeals Act, provides in pertinent part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a *decision, judgment, or order of a district court dismissing an indictment or information as to any one or more*

1. The facts set forth in this paragraph are apparently not in dispute.

2. In *George*, we held that the District Court of the Virgin Islands is not a "court of the United States" for the purposes of the statute making it a crime to attempt to influence, intimidate, or impede any officer of a court of the United

States in the discharge of his duty. *Id.; see* 18 U.S.C. § 1503 (1982); 48 U.S.C. §§ 1611, 1612 (1982); *see also Dr. Bernard Heller Found. v. Lee*, 847 F.2d 83, 87 (3d Cir.1988) ("court of the United States" in 28 U.S.C. § 1920 *does not* encompass District Court of Virgin Islands).

counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

18 U.S.C. § 3731 (1982). The Supreme Court has interpreted this section as removing all statutory bars to government appeals from orders of a district court dismissing counts of an indictment or information, and permitting all such appeals not barred by the Constitution. *United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232 (1975). Therefore, we have jurisdiction to hear the instant appeal unless the double jeopardy clause precludes us from doing so.

▮ The double jeopardy clause of the Fifth Amendment provides that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.[3] The reason for this protection is that the power of the state should not be utilized "to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Jeopardy attaches in a jury trial when the jury is empaneled and sworn. *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51

L.Ed.2d 642 (1977). The attachment of jeopardy will not always bar retrial, however. "[A] defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The jurisprudence teaches us that each time the double jeopardy clause is invoked, we must strike the proper balance between these competing interests.

If the district court's dismissal of the information was truly an "acquittal," we may not hear this appeal. "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'" *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977) (quoting *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896)); *see also Smalis v. Pennsylvania*, 476 U.S. 140, 144–46, 106 S.Ct. 1745, 1748–49, 90 L.Ed.2d 116 (1986) (state trial judge's ruling on defendant's demurrer holding evidence insufficient to establish factual guilt constitutes an acquittal, and double jeopardy clause bars retrial).[4] We therefore must determine whether the district court's dismissal of the information in the instant case constituted an "acquittal" barring an appeal.[5]

---

**3.** The protections of the fifth amendment are explicitly extended to the Virgin Islands by 48 U.S.C. § 1561 (1982 & Supp.III 1985).

**4.** Where the district court, in rendering an acquittal, made factual determinations, even though based on erroneous rulings, courts have generally denied retrial. *See Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962) (acquittal bars retrial despite "egregiously erroneous foundation"); *see also Sanabria v. United States*, 437 U.S. 54, 64, 75–78, 98 S.Ct. 2170, 2184–86, 57 L.Ed.2d 43 (1978) (once defendant acquitted, double jeopardy clause absolute bar to prosecution despite trial court's erroneous rulings); *cf. United States v. Maker*, 751 F.2d 614, 623–24 (3d Cir.1984) (dismissal is not acquittal because judge made erro-

neous legal ruling changing proof necessary for conviction), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). These cases are inapposite to the case at bar, because no factual determination was made in this case and therefore no acquittal was rendered.

**5.** Fed.R.Crim.P. 29 ("Motion for Judgment of Acquittal") governs acquittals following the close of evidence on either side. Here, the judge did not invoke Rule 29 in the order of dismissal, although he mentioned it during questioning of government counsel with regard to appealability upon dismissal. J.A. at 24 ("If I dismiss it at the end of your case on Rule 29, can you appeal it?"). The court's reference to Rule 29, however, is not dispositive on the issue

In *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed. 65 (1978), defendant moved before trial and twice during trial for dismissal of two counts of his indictment on the grounds that his defense had been prejudiced by preindictment delay. At the close of all the evidence, the trial court granted the defendant's motion. The government appealed pursuant to 18 U.S.C. § 3731. The court, overruling *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975) (judgment discharging defendant bars retrial whether or not judgment resolved factual issues), held that where a defendant himself seeks to have his trial terminated without any submission to the factfinder as to guilt or innocence, retrial is not barred by the double jeopardy clause.

Arguably, *Scott* is distinguishable from the case at bar. In *Scott,* the defendant actively sought termination of the trial claiming the preindictment delay prejudiced his defense. The Court stated that "[s]uch a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence

determined by the first trier of fact." *Scott,* 437 U.S. at 93, 98 S.Ct. at 2195.

In this case, the defendant did not independently seek to terminate the trial, but rather explicitly consented to the court's *sua sponte* motion to dismiss. We believe that the defendant's explicit consent to the court's dismissal for reasons unrelated to the facts is not sufficiently removed from "deliberate action" that *Scott* should not mandate the result here.[6] The Court's summary description of the facts in *Scott* depicts a situation very similar to the one *sub judice:*

> [This is] a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.

*Id.* at 96, 98 S.Ct. at 2196. Here, the defendant actively supported the judge's legal claim that the government's case against him must fail.[7]

---

of whether the dismissal was an acquittal. "[T]he trial judge's characterization of his own action cannot control the classification of the action for purposes of our appellate jurisdiction." *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553 n. 7, 27 L.Ed.2d 543 (1971) (citation omitted).

6. Under significantly different facts, the Ninth Circuit has held that where it is unclear whether the district judge made any factual determination, and the court dismissed the case *sua sponte* in which the defendant passively acquiesced, double jeopardy bars retrial. *United States v. Dahlstrum,* 655 F.2d 971, 974–76 (9th Cir.1981), *cert. denied,* 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982). That case differs from the one *sub judice,* because the defendant's acquiescence in *Dahlstrum* was in response to the judge's statements that he "did not believe the government had proved its case." *Dahlstrum,* 655 F.2d at 975. Thus, acquiescence could not have been read to mean that retrial would be acceptable to the defendant. *Id.* In this case, the defendant encouraged the dismissal solely on the grounds that the statute was inapplicable. J.A. at 20–21. Furthermore, in *Dahlstrum,* the judge never even consulted defendant on the issue, while in this case, the judge asked for guidance from the defense. *Id.* at 19–20, 32.

Here, the defense explicitly consented to the court's suggestion that § 201 was inapplicable to a Virgin Islands court by providing further justification for that conclusion, *Id.* at 20, and argued that the appropriate action by the court was immediate, midtrial dismissal. *Id.* at 32. Such consent to the court's stated action is not like the acquiescence in *Dahlstrum,* where the defendant "had practically no control." *Id.*

7. In *Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986), the Supreme Court held that the trial court's granting of defendant's demurrer, Pennsylvania Rule of Criminal Procedure 1124, 42 Pa.Cons.Stat. (1985 Pamphlet), challenging the sufficiency of the evidence, was a factual determination and therefore, an acquittal. The Court stated that "[w]hat the demurring defendant seeks is a ruling that as a matter of law the State's evidence is insufficient to establish his factual guilt." *Smalis,* 476 U.S. at 144, 106 S.Ct. at 1748. While *Smalis* clearly follows the reasoning of *Scott,* it is inapposite here. The defendant's demurrer in *Smalis* was a technical legal motion challenging the sufficiency of the evidence. While the defense in this case "demurred" to the district court's *sua sponte* decision to dismiss, in the sense that it concurred, at no time did the defense challenge the sufficiency of the evidence.

In *Scott*, the Supreme Court delineated the circumstances under which a trial court's dismissal of an indictment or information would constitute an acquittal, and thus preclude consideration of a government appeal:

> [A] defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not of some or all of the factual elements of the offense charged." Where the court, before the jury returns a verdict, enters a judgment of acquittal pursuant to Fed. Rule Crim.P. 29, appeal will be barred only when "it is plain that the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction."

*Scott*, 437 U.S. at 97, 98 S.Ct. at 2197 (quoting *Lee v. United States*, 432 U.S. 23, 30, 97 S.Ct. 2141, 2145, 53 L.Ed.2d 80 (1977), and *Martin Linen*, 430 U.S. at 571, 572, 97 S.Ct. at 1354, 1355) (citations omitted) (brackets added by *Scott* Court). Thus, at a minimum, only if the court made some determination as to the facts can a dismissal appropriately be deemed an acquittal.

The district court did not engage in any evidentiary evaluation in this case. Indeed, it took great pains to establish that it had not done so, declaring that "my problem goes not with the supposed factual situation but whether it should be in this court at all," J.A. at 39, and that "[i]t has nothing to do with whether . . . they could prove it or not prove it but simply a legal, technical issue." *Id.* at 45.[8] The court was concerned that a continuation of the trial would be a "charade," and sought legal guidance as soon as possible. "I would very much like to have this matter resolved on a level, a judicial level higher than this court. Of course the only way to get that accomplished is to have the case appealed to the circuit court." *Id.* at 33.

The judge's action here was unmistakable. He neither made nor even intimated any determination with regard to the sufficiency of the evidence. Rather, he sought certification to this Court of the legal question. *Id.* at 27. Barred from that, he dismissed so that this Court could rule on the legal issue. Therefore, under *Scott*, the district court's dismissal of the information did not constitute an acquittal for the purposes of the double jeopardy clause, and we are not barred from considering this appeal.[9]

### III.

■ Turning to the merits, the sole issue in this case is whether 18 U.S.C. § 201(c)(3) prohibits the solicitation of bribes by witnesses presenting testimony before the District Court of the Virgin Island. Our

8. The district court clearly contemplated further proceedings against the defendant. But the trial court's intimation "that there will be a new trial is not conclusive on the issue of double jeopardy." *Scott*, 437 U.S. at 92, 98 S.Ct. at 2194.

9. There is one other way of viewing this case that might also indicate we have appellate jurisdiction. In *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), the Court held that retrial of the defendant on theft charges after dismissal of a defective information for failure to allege the requisite elements did not offend the double jeopardy clause, because it was the equivalent of a mistrial. The Court stated that the proceedings did not terminate in the defendant's favor, but rather "[t]he error, like any prosecutorial or judicial error that necessitates a mistrial, was one that could be avoided—absent any double jeopardy bar—by beginning anew the prosecution of the defendant." 432 U.S. at 30, 97 S.Ct. at 2146. This case is similar in that the judge's error "could be avoided . . . by beginning anew the prosecution." However, we hesitate to label the dismissal in this case a "mistrial." A dismissal like the one in this case can be distinguished from a mistrial as follows: "a dismissal is granted for an error or defect thought to present an absolute barrier to conviction on the offense charged, while a mistrial is declared merely because of circumstances making it impossible or impracticable to continue the particular trial to conclusion." W. LaFave & J. Israel, *Criminal Procedure* § 24.2 (1984). Here, the judge dismissed, believing that the court did not properly have jurisdiction under the statute, J.A. at 43, a defect which would have barred conviction; there were no "circumstances" making the particular trial impracticable. Thus, this case is more like the dismissal in *Scott* than the mistrial in *Lee* and, therefore, the proper analysis is whether the dismissal is an acquittal barring retrial under *Scott*.

standard of review for statutory interpretation is plenary. *See AMP, Inc. v. United States,* 820 F.2d 612, 615 (3d Cir.1987); *Wheeler v. Heckler,* 787 F.2d 101, 104 (3d Cir.1986).

First, the plain language of the statute indicates that § 201(c)(3) should be applied in the District Court of the Virgin Islands. As the Supreme Court has repeatedly explained, the cardinal axiom of statutory construction is that " '[i]n determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." ' " *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980))); *see also Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) ("When we find the terms of a statute unambiguous, judicial inquiry is complete," unless there are highly unusual circumstances.). The portion of 18 U.S.C. § 201(c) under consideration in this case is not ambiguous.

The statute, which had its genesis as the Act of March 4, 1909, ch. 321 § 134, 35 Stat. 1113,[10] in pertinent part punishes:

(c) Whoever—

\*   \*   \*   \*   \*   \*

(2) directly or indirectly, gives, offers, or promises anything of value to any person for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, *before any court,* any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom;

(3) directly or indirectly, demands, seeks, receives accepts or agrees to receive or accept anything of value personally for or because of the testimony under oath or affirmation given or to be given by such person as a witness *upon any such trial,* hearing or other proceeding, or for or because of such person's absence therefrom;

(emphasis added). The district court construed the phrase "witness upon a trial ... before any court" to apply exclusively to witnesses appearing before Article III courts or "Courts of the United States." [11] J.A. at 10. However, the statute on its face is not limited to the proscription of bribery by witnesses who appear in a "court of the United States." Rather, section 201(c)(3), incorporating by reference section 201(c)(2), broadly embraces bribery in "any court." [12]

---

**10.** Section 134, which was part of the 1909 recodification of the federal penal laws, provided as follows:

> Whoever, being, or about to be, a witness upon a trial, hearing, or other proceeding, before any court or any officer authorized by the laws of the United States to hear evidence or take testimony, shall receive, or agree or offer to receive, a bribe, upon any agreement or understanding that his testimony shall be influenced thereby, or that he will absent himself from the trial, hearing, or other proceeding, or because of such testimony, or such absence, shall be fined not more than two thousand dollars, or imprisoned not more than two years, or both.

The provision was introduced in the Senate and subsequently enacted by Congress without further explanation or debate. *See* 42 Cong.Rec. 1905 (1908).

**11.** While the district court apparently interpreted the language of § 201(c)(3) as barring jurisdiction, we do not believe that § 201(c)(3) speaks to jurisdiction. Rather, like the statute at question in *George,* the language in question here speaks "not to the jurisdiction or the powers of the court but rather to its nature as an institution." *George,* 625 F.2d at 1089. See discussion *infra.*

**12.** Of course, the broadest reading of the section *might theoretically permit a federal prosecution for bribing a witness in a state court proceeding. See, e.g., Adams v. Maryland,* 347 U.S. 179, 181, 74 S.Ct. 442, 445, 98 L.Ed.608 (1954) ("any court" interpreted to mean both United States courts and state courts). Such an interpretation, however, ignores the language of limitation modifying "any court" in section 201; the court must be "authorized by the laws of the

The District Court of the Virgin Islands is neither a court established pursuant to Article III of the Constitution nor a "court of the United States" within the meaning of 28 U.S.C. § 451 (1982). *See United States v. George*, 625 F.2d at 1088–89. In *George*, we reversed the conviction of a defendant charged with endeavoring by threats to influence, intimidate, and impede an officer of the District Court of the Virgin Islands in the discharge of his duties, in violation of 18 U.S.C. § 1503,[13] reasoning that, because the District Court for the Virgin Islands was a territorial court and not a "court of the United States," as specified by section 1503, conviction under that statute would not lie. Unlike the language in section 1503, however, the language of section 201(c) is not limited in its scope to bribery attempts by witnesses appearing before courts "of the United States." Instead, the statute prohibits, without further qualification, the solicitation of bribes by a witness "before *any court.*" *See* 18 U.S.C. § 201(c)(2), (3) (emphasis added).[14] Thus, the plain language of the section impels the conclusion that the section is applicable to the District Court of the Virgin Islands.

Second, because the statutory language of section 201(c)(3) is unambiguous, it speaks on its face to its congressional purpose. *See United States v. Turkette*, 452 U.S. at 593, 101 S.Ct. at 2533; *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980). In *In re Roach*, 824 F.2d 1370 (3d Cir.1987), this Court emphasized that, in construing a federal statute, it "must ... remain 'mindful of the statute's object and policy and must read the disputed provision in the context of the entire statute.'" *Roach*, 824 F.2d at 1372 (quoting *N.J. Transit Policemen's Benevolent Association, Local 304 v. New Jersey Transit Corp.*, 806 F.2d 451, 453 (3d Cir. 1986)). This general principle applies with particular force to 18 U.S.C. § 201, which this and other courts have recognized should be broadly construed to effectuate its legislative objectives. *See, e.g., United States v. Evans*, 572 F.2d 455, 480 (5th Cir.) (provisions of 18 U.S.C. § 201 must be broadly construed in order to accomplish their legislative purpose), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Zullo*, 151 F.2d 560, 561–62 (3d Cir.1945) (broadly construing precursor of section 201 to effectuate its legislative purpose).

In enacting section 201(c)(3), Congress expressly manifested its intent to protect the integrity of a broad range of proceedings at which government officials are empowered to hear testimony. The statute applies its prohibitions not only to witnesses who appear before "any court" but also to those appearing before "any ... agency, commission or officer authorized by the laws of the United States to take testimony." If Congress intended section 201(c) to apply to hearings before administrative law judges appointed pursuant to legislative enactment, it also must have intended the statute to protect criminal trials in territorial courts before federally-appointed judges who are themselves "officers authorized by the laws of the United States to take testimony."

Similarly, it is a fundamental principle of statutory construction that "[s]tatutes should be interpreted to avoid untenable distinctions and unreasonable results when-

---

United States to hear evidence or take testimony." Clearly, state courts are not authorized by federal law to take testimony. In any event, this case does not present such concerns, as the United States District Court for the District of the Virgin Islands is a court established by Congress. *See* 48 U.S.C. 1611.

13. The statute, 18 U.S.C. § 1503 provides in part:

Whoever corruptly, or by threats of force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both.

14. Furthermore, it is also clear that, if Congress intended section 201(c) to apply only to courts of the United States, it knew how to say so as other sections of the federal criminal code clearly demonstrate. *See, e.g.*, 18 U.S.C. §§ 1503, 1504, 1507, 1508, 1509 (1982); 18 U.S.C. §§ 1512(f)(1), 1515(a) (Supp.IV 1986).

ever possible." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982); *see* 2A C. Sands, *Sutherland on Statutory Construction*, § 45.12 (4th ed. 1973); *see also In re Roach*, 824 F.2d at 1372. It is unlikely that, absent express language of limitation, Congress intended to protect Article III courts and administrative tribunals from the bribery of witnesses or the solicitation of bribes but, at the same time, did not intend to extend the same protection to tribunals it had established pursuant to Article I of the Constitution. The constitutional source of the court's authority has no bearing whatsoever upon the need for such protection; the impact of witness bribery upon the integrity of the fact-finding process is the same whatever the source of the court's jurisdiction. Nonetheless, the construction of section 201(c) that the district judge reached would disallow prosecutions for witness bribery not only in connection with proceedings in territorial courts, but also in proceedings before any Article I court, such as the federal bankruptcy court, the tax court, and military court-martial. We do not believe that Congress could have intended that result.

Finally, the district court erred in the way that it distinguished between cases brought under the United States Code and those brought under the Virgin Islands Code, *see* J.A. at 34–35, when it stated that this proceeding "[grew] out of a prosecution on the laws of the Virgin Islands having absolutely nothing to do with the trial proceedings, agencies, or courts mentioned in 201 at all." *Id.* at 35. The court's distinction goes too far.

In 48 U.S.C. § 1612(b) (Supp.III 1985), Congress declared the general jurisdiction of the District Court of the Virgin Islands, explicitly designating those instances when and for what purposes the court would be serving as a local, or territorial, court:

> In addition to the jurisdiction described in subsection (a) of this section [diversity, federal question, bankruptcy, tax] the District Court of the Virgin Islands shall have general original jurisdiction in all causes in the Virgin Islands the jurisdiction over which is not then vested by local law in the local courts of the Virgin Islands: *Provided*, That the jurisdiction of the District Court of the Virgin Islands under this subsection shall not extend to ... criminal cases wherein the maximum punishment which may be imposed does not exceed a fine of $100 or imprisonment for six months, or both.... The courts established by local law shall have jurisdiction over the ... criminal cases ... set forth in the preceding proviso. In causes brought in the district court solely on the basis of this subsection, the district court shall be considered a court established by local law for the purposes of determining the availability of indictment by grand jury or trial by jury.

*Id.* Thus, the District Court of the Virgin Islands has general original jurisdiction over criminal cases with punishment exceeding the stated minima. And for purposes other than determining the availability of indictment by grand jury or trial by jury, it sits as a district court. *See also Virgin Islands v. Sun Island Car Rentals, Inc.*, 819 F.2d 430, 432 (3d Cir.1987). In this case, the Virgin Islands Code provides for a maximum imprisonment of ten years, *see* V.I. Code Ann. tit. 14, § 1083, and the court was not determining the availability of grand jury indictment or trial by jury; therefore, the court sat as a district court. Because the court was sitting as a district court, its processes are protected from corruption by section 201(c), *see* discussion *supra*, and, thus, the district court erred when it asserted that section 201(c) was inapplicable because the underlying criminal offense was charged under the Virgin Islands Code.

### IV.

For the foregoing reasons stated above, we will reverse the order of the district court and remand for trial.