ERIC F. AND MARY E. WEISS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weiss v. Commissioner
Docket No. 24389-84.
United States Tax Court
T.C. Memo 1988-586; 1988 Tax Ct. Memo LEXIS 615; 56 T.C.M. (CCH) 948; T.C.M. (RIA) 88586; December 27, 1988; As amended January 3, 1989 Walter Tribbey, for the petitioners. Joseph E. Mudd, for the respondent. GERBER
MEMORANDUM OPINION GERBER, Judge: Respondent, in a statutory notice of deficiency dated April 13, 1984, determined deficiencies in income tax and additions to tax for petitioners' 1976, 1977 and 1978 taxable years, as follows: Addition to Tax
Taxable Year
Income Tax
Section 6653(b) [1]
1976
$ 10,876.31
$ 5,438.15
1977
7,602.60
3,801.30
1978
15,936.75
7,968.38
Petitioners, in anticipation of a November 30, 1987, trial date, filed a Motion To Suppress Evidence on October 19, 1987. *616 The parties have stipulated specific amounts of deficiencies in income tax and additions to tax that would result if we granted or denied petitioners' motion. Accordingly, this opinion will be dispositive of all issues raised by the pleadings and the petitioners' motion is being treated as a summary judgment motion under Rule 121. No trial was held and the parties have orally stipulated that the facts and holdings of the United States District Court are to be accepted for purposes of this case. Petitioners' motion is premised upon the holding of the United States District Court for the Central District of California dismissing with prejudice the related criminal tax indictment because of "institutional bad faith" on the part of the Internal Revenue Service. United States v. Weiss,566 F. Supp. 1452 (C.D. Cal. 1983), affd. without published opinion 730 F.2d 772 (9th Cir. 1984) (Weiss I). The "institutional bad faith" consisted of variances from the Internal Revenue Manual (IRM) in the process of criminal referral of the case from the Examination Division (Exam) to the Criminal Investigation Division (CID) of the Internal Revenue Service. Specifically, *617 CID advised Exam of the acceptance of the case for criminal investigation 26 days after referral, instead of 15 days as required by the IRM. Additionally, the wrong form was used by CID to request the assistance of a cooperating revenue agent from Exam. During the 11-day hiatus between the 15-day IRM standard and the 26-day actual time, the District Court in Weiss I assumed that "Civil Summonses" issued under section 7602 may have been used to gather evidence in violation of the holding in United States v. LaSalle National Bank,437 U.S. 298, 316-317 n. 18 (1978). The question presented for our consideration is whether such "institutional bad faith" in the context of this civil proceeding precludes respondent's use of any such evidence and/or calls for sanctions to be employed against respondent. See United States v. Janis,428 U.S. 433 (1976). The facts as presented by the parties, consist of the District Court's "Minute Order" in Weiss I, as follows: Hauk, District Judge: This matter came on for Jury Trial on Wednesday, June 29, 1983, before the undersigned Judge A. Andrew Hauk upon transfer under Central District of CaliforniaLocal *618 Rules, Rule 2, from the Honorable A. Wallace Tashima of this above-entitled Court due to his crowded Court calendar, and continued at jury trial before the undersigned Judge thereafter from day to day, June 29, June 30, July 1, July 5, and July 6, 1983. In the course of the trial, evidence was introduced and analyzed by the Court which strongly indicated and suggested to the Court that Plaintiff U.S.A., by and through its Internal Revenue Service (IRS) of the Department Of The Treasury by reason of possible acts of misconduct by the IRS agents and employees, had engaged in what the Court considered might well constitute "governmental misconduct" and "institutional bad faith", in the improper and intermingled initiation and execution of civil and criminal investigations in this case. For which reasons, the Court entertained a motion by Defendant for Dismissal of the Indictment and Judgement of Acquittal, against Plaintiff U. S. A. and in favor of Defendant, and set a deadline date of noon, July 6, 1983, for the Government to produce documents and other evidence showing or tending to show that there was no governmental misconduct or institutional bad faith in the course of the investigation *619 and prosecution of this case and ordered briefings on law and fact by both sides of this issue. When the Government was unable and failed to produce such documents and evidence, the Court initiated the hearing on July 6, 1983, which it had previously indicated it would, immediately after the deadline of noon. After full hearing of the arguments, and consideration of the briefings on facts and law, the Court now finds and concludes as follows: Findings of Fact and Conclusions of Law 1. The Government and the Internal Revenue Service (IRS) of the Treasury Department in this case are guilty of governmental misconduct and institutional bad faith in failing to follow the strictures and regulations of the Internal Revenue Manual (IRM). [1]
2. They did not follow the Manual and its Regulations in conducting the civil investigation and the criminal investigation in this case. 3. While the Civil Audit Division referred the investigation to the Criminal Intelligence Division (CID) for criminal investigation on May 15, 1979, utilizing Form *620 2797 as required by Section 4565.22(1) of the IRM, the CID did not return the referral report within the fifteen (15) work-day limitation contained in Section 4565.22(2) of the IRM, failing to notify the Audit Division of the acceptance of the referral for criminal investigation until June 21, 1979, after the passing of twenty-six (26) work days. 4. Although the Internal Revenue Manual requires that such notification of acceptance of the investigation by CID must be made on either Form 2797 or Form 3212 (IRM, Section 9322.2(1)), upon which the CID must also note whether a cooperating civil officer should be assigned, and although the CID utilized Form 2797 in accepting the referral, it did not fill in the box on this form to request the assistance of a cooperating Civil Revenue Agent, all in violation of IRM, Section 9322.2(1); nor was any extension of time requested as permitted in Section 9322.2(2) of said IRM. [2]
*621 5. The request for assignment of a Cooperating Civil Officer was made by the CID on Form 1937 and Form 1937-A (carbon copy), which is not permitted by the IRM. [3]
6. In any event the request was not made until October 9, 1979 by the Criminal Intelligence Division and was not acted upon by the Civil (Audit) Division until October 10, 1979 when Civil Revenue Agent Krietz was finally designated to be assigned to the CID as a Cooperating Officer. [4]
7. In the meantime, however, the CID initiated its criminal investigation *622 and utilized as early as October 1, 1979, Revenue Agent Floyd Krietz to assist as a Cooperating Officer although at that time he had not yet been so assigned or designated. The CID Special Agent Thompson and the Civil Revenue Agent Krietz interviewed the taxpayer twice, on October 1, 1979 and October 4, 1979, interrogating the defendant taxpayer and demanding records as part of the Criminal Investigation conducted by Thompson with the assistance of Krietz, who was not assigned or designated for such assistance until six days after the second interrogation and demand for production of documents. [5]
8. Despite repeated requests by the Court, the Assistant United States Attorney in charge of the case for the Government failed and refused to give the Court copies of the Civil Summonses issued under Section 7602 of the Internal Revenue Code, 26 U.S.C. 7602, by the Special Agent of the Criminal Investigation Division (CID) or by the Revenue Agent of the Civil Audit Division, so the Court could determine whether or not the CID or CAD issued and served *623 any such Civil Summonses before the assignment and designation of the Civil Revenue Agent on October 10, 1979. The Court was informed that copies of these Civil Summonses could not be found despite diligent searches throughout the files and records of the U.S. Attorney's Office, and of the Internal Revenue Service, both Civil Audit Division and Criminal Intelligence Division. In the absence of copies of these Civil Summonses, and failing to receive even the dates of issuance or service of any such Civil Summonses, although the witness Thompson, the CID Special Agent, testified there were at least fifteen (15) such Civil Summonses issued and served, the Court cannot assume anything except that it was possible, if not probable, that at least some of these Civil Summonses were utilized by the Criminal Special Agent or the Civil Revenue Agent in support of an investigation wholly criminal in nature, in the ten-day period between the first questioning of the defendant taxpayer and the assignment and designation of the Civil Revenue Agent Krietz to assist and cooperate in the criminal investigation. 9. Any such criminal use of Civil Summonses is not to be condoned or tolerated by *624 the Judiciary. United States v. LaSalle National Bank,437 U.S. 298, 316-317 n.18 (1978), United States v. Genser,595 F.2d 146, 151 (3rd Cr. 1979), cert. denied,444 U.S. 928 (1979), United States v. Dahlstrum,493 F. Supp. 966, 971-973 (C.D. Cal. 1980), appeal dismissed,655 F.2d 971 (9th Cir. 1981), cert. denied,455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed 2d 472 (1982). 10. As this Court aptly stated in Dahlstrum, supra,
"While dismissal is a strong remedy to apply, it serves as the only effective deterrent when a case reaches the criminal trial phase. This Court understands and respects the difficulties faced by the IRS in the performance of its assigned tasks. However, in view of the circumstances of this case, this Court feels compelled to dismiss the indictment with prejudice in order to preserve the interests of a taxpayer defendant subjected to this type of governmental misconduct, even though fueled only by 'institutional bad faith' and not any personal bad faith." 493 F. Supp. 966 at 975. The Dahlstrum factual situation is virtually *625 identical to the facts found here, which compels the Court to conclude that the present case is legally undistinguishable from Dahlstrum.
The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law in addition to the Findings and Conclusions made in its oral decision rendered in open Court on July 6, 1983, all of which are being transcribed and which the Court will in due course sign and date. [6]
LET JUDGMENT BE ENTERED ACCORDINGLY Judgment The Court having thus made and entered its Decision and Order containing its Findings of Fact and Conclusions of Law herein, and good cause appearing, IT IS HEREBY, ADJUDGED AND DECREED AS FOLLOWS: 1. The Indictment herein, and each and every count thereof, is dismissed with prejudice. 2. Defendant is acquitted of and from any and all counts and charges *626 contained in said indictment. 3. The Jury, and each and every member thereof, is discharged and ordered to report to the Jury Clerk for further assignment. 4. Defendant's appearance bond and its obligors are exonerated and defendant and his bail are released. 5. At the request of the Government, this Minute Order, (Findings of Fact, Conclusions of Law and Judgment Dismissing Case Against Plaintiff, U.S.A. and Granting Acquittal to Defendant) is stayed, except for discharge and release of Defendant and exoneration of bail, for a period of ten (10) days to enable the Government to determine and act upon any appeal or other proceeding if so advised. 6. The Clerk shall forthwith serve copies of this Minute Order on all counsel of record herein. Our task is to analyze whether the "institutional bad faith" described in Judge Hauk's Minute Order should have any effect on this subsequent civil tax proceeding involving the same taxable year(s) and/or event(s). Petitioners argue that certain evidence should be suppressed [2] because of respondent's "institutional bad faith" as found by Judge Hauk. Respondent, in general, argues that "evidence in a civil case should only be suppressed *627 when constitutional rights have been violated." Respondent further contends that the failure to follow the IRM provisions in question did not violate petitioners' rights so as to require the suppression of evidence. We agree with respondent. Petitioners suggest we begin our analysis with consideration of United States v. Janis,428 U.S. 433 (1976). In that case the Supreme Court analyzed the exclusionary rule, from its inception in *628 Weeks v. United States,232 U.S. 383 (1914), and concluded "that the judicially created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign." United States v. Janis, supra at 460-461. Because the exclusionary rule was intended to work as a "deterrence effected by the denial of use of the evidence," the Supreme Court reasoned that evidence illegally seized by one sovereign "falls outside the offending officer's zone of primary interest" and accordingly would not effectively serve as a deterrent. Here, however, petitioners ask us to suppress evidence, not necessarily because it was illegally seized, but because it was obtained under conditions of "institutional bad faith" and possibly in violation of the principles set down in United States v. LaSalle National Bank,437 U.S. 298 (1978). Not all violations of an agency's internal procedures rise to the level of a violation of constitutional rights or statutory requirements. United States v. Caceres,440 U.S. 741, 755-756 (1979) (Caceres); *629 Vallone v. Commissioner,88 T.C. 794, 807 (1987) (Vallone);Riland v. Commissioner,79 T.C. 185, 201 (1982). Furthermore, there is no contention here that respondent's agents were acting in bad faith or that their actions were fraudulent or deceitful. See, for example, United States v. Nuth,605 F.2d 229, 234 (6th Cir. 1979); United States v. Tweel,550 F.2d 297, 299 (5th Cir. 1977). In Caceres the Supreme Court was confronted with a situation where Internal Revenue Service agents had made tape recordings of conversations which were offered in evidence in support of a criminal prosecution for bribery of a Government agent. The tape recordings, although made in violation of the IRM, did not amount to violations of constitutional or statutory law. The lower courts had suppressed the tape recordings under the principles of the exclusionary rule and the Supreme Court reversed. A balancing between the deterrent effect of the exclusionary rule and the benefit of self-imposed rules utilized by law enforcement agencies was employed by the Supreme Court in its analysis. Unlike the circumstances in United States v. Janis, supra, *630 Caceres presents a situation where a "sovereign" seeks to utilize evidence that its own agents obtained in violation of some internal requirement. The Supreme Court in Caceres established, what has been called, a "good-faith exception" to the exclusionary rule. The "good-faith exception" permits a trial court to use its discretion to decide whether to exclude (suppress) evidence obtained in violation of internal regulations, but not in violation of constitutional rights or statutory requirements, where the "agency action, while later found to be in violation of the regulations, nonetheless reflected a reasonable, good-faith attempt to comply * * *." United States v. Caceres, supra, at 758. Recently, in Vallone v. Commissioner, supra at 806-815, we applied the principles set forth in Caceres.Vallone involved respondent's agent's contacts with the taxpayer "after finding firm indications of fraud" which was in violation of IRM. The type of contact involved concerned the executions of consents to extend the period within which respondent was able to assess and collect the tax. The contact occurred within a few weeks of the finding *631 of firm indications of fraud and one week after the referral for criminal investigation. Thereafter respondent's agent obtained certain checks which the taxpayer sought to suppress on constitutional grounds. Vallone is similar to this case, including a United States District Court finding against the Government based upon respondent's agent's failure to comply with the IRM. In Vallonethe District Court refused to enforce respondent's summons because they were apparently based upon information obtained by the Government following the obtaining of a consent, which occurred after referral for criminal consideration. "[T]he District Court concluded that the denial of the summonses was warranted because enforcement would otherwise constitute an abuse of the Court's process." Vallone v. Commissioner, supra, at 801. In the civil tax case we did not find the IRM violations to be a "serious affirmative misrepresentation" or a violation of the taxpayers' constitutional rights or a statutory requirement and the questioned evidence was not suppressed. Vallone v. Commissioner, supra at 811-816. In this case the District Court analyzed evidence *632 "which strongly indicated and suggested" that respondent "by reason of possible acts of misconduct * * * engaged in what the Court considered might well constitute 'governmental misconduct.'" Similarly, the "misconduct" involved the transition from the civil tax examination to the criminal tax investigation. In this case, however, the Government was unable to provide the summonses used to obtain information after the "governmental misconduct." In view of the Government's failure to provide the summonses, the District Court dismissed the criminal indictment based upon its inability to "assume anything except that it was possible, if not probable, that at least some of these * * * Summonses were utilized by the Criminal Special Agent in support of an investigation wholly criminal in nature, in the ten-day period between the first questioning * * * and designation of the [civil examining agent]." The District Court was conditional in its findings of "governmental misconduct" or "institutional bad faith" and did not actually find any such conduct. The criminal tax indictment was dismissed on the assumption that a constitutional right could have been violated and the Court was unable *633 to determine whether such violation actually occurred. There was no finding that respondent's agents intentionally or knowingly acted in bad faith. The essence of Judge Hauk's holding is that there was potential for violation of the principles set down in United States v. LaSalle National Bank,437 U.S. 298 (1978). That case, in the broadest sense, prohibits the use of a civil summons to develop the criminal case. Assuming that civil summonses were issued or outstanding during the 11 days that respondent's agents failed to use the proper form, check the appropriate box or notify of the acceptance of a criminal case, we conclude that the District Court's dismissal of the indictment brought against petitioners is sufficient to fulfill the purpose of the exclusionary rule. For purposes of this civil tax matter, we are not aware that petitioners' constitutional rights have been violated or that respondent has otherwise violated a law or statute. Although the District Court found it necessary to sanction respondent in the setting of that case, we are not compelled to sanction respondent here. This is especially true here, where the District Court did not find specific *634 violations of constitutional rights or statutes as a result of the "governmental misconduct" and said "misconduct" does not itself rise to that level. Moreover, the District Court did not identify any specific evidence that may have been obtained during the period that respondent was in a state of "governmental misconduct." In view of the foregoing, we see no need to sanction respondent by means of the suppression of evidence, or otherwise. To reflect the foregoing, Decision will be entered in accord with the parties' stipulation.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue and all rule references are to this Court's Rules of Practice and Procedure.↩
1. The Internal Revenue Manual in effect during the relevant period of 1979 is found and cited in "Internal Revenue Manual" (C.C.H. 1979).↩
2. Interesting enough to arouse the Court's skeptical curiosity is the fact that the same IRS Criminal Group Manager, Thomas W. Sullivan, made the same kind of referral acceptance on behalf of the Criminal Intelligence Division to the Civil Audit Division in Dahlstrum, as Group Manager of Criminal Special Agent Marc Schreiber on the same Form (IRS Form 2797) which he used here as Group Manager of Criminal Special Agent Ralph R. Thompson, and significantly also here failed to fill out the box "[] Please assign Cooperating Officer" (Exhibit 1 to GOVERNMENT'S RESPONSE TO COURT'S QUESTIONS RE IRS INVESTIGATION), just as he failed to do in Dahlstrum,493 F. Supp. 966 at 969, f.n. 5). See U.S. v. Dahlstrum,493 F. Supp. 966 (C.D. Cal. 1980), appeal dismissed,655 F.2d 971 (9th Cir. 1981), cert. denied, 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed 2d 472↩ (1982).
3. See Exhibit 5 to Government's Response to Court's Questions re IRS Investigation.↩
4. Id., f.n. 3 supra,↩ Exhibit 5 to Government's Response. Thomas W. Sullivan, CID's Group Manager of CID Special Agent Thompson, used the original of Exhibit 5 to request on October 9, 1979, the Civil Examination (Audit) Division to assign a Civil Revenue Agent to cooperate with CID's Criminal Investigation; and Marty G. Laffer, the Civil Examination Division Group Manager of Civil Revenue Agent Charles Siemer, used the carbon copy of Exhibit 5 to designate on October 10, 1979 another civil Revenue Agent, Floyd Krietz for assignment as the civil Cooperating Officer.
5. That is, not until October 10, 1979. See f.n. 3, supra,↩ Exhibit 5, carbon copy.
6. As a matter of fact the Court has taken pains to sign, file and enter the transcript of the Court's oral Findings of Fact and Conclusions of Law and Decision rendered in open Court on July 6, 1983, as additional support for the within Minute Order, and on the same day it is signing, filing and entering the Minute Order, to wit, today, July 12, 1983.↩
2. The parties have not specifically delineated the nature or type of evidence to be suppressed, but have provided the Court with two sets of agreed deficiencies for entry of dicision depending upon whether or not we decide to suppress evidence. Although the parties have not expressly so stated, we surmise that the evidence to be suppressed was obtained during the 11-day period within which Judge Hauk found respondent to have been in a state of "institutional bad faith." Petitioners also argued that res judicata would require the same findings as Judge Hauk. Becauuse the parties agreed that Judge Hauk↩'s findings of fact and conclusions of law are to be accepted as correct, we see no need to address the concept of res judicata.