PEOPLE v MEZY

PEOPLE v HERMIZ

Docket No. 101689, 102274. Argued January 10, 1996 (Calendar No. 13). Decided July 31, 1996.

Basil Mezy was convicted by a jury in the Oakland Circuit Court, Richard D. Kuhn, J., of conspiracy to possess with intent to deliver more than 650 grams of cocaine. Previously, Mezy had pleaded guilty in the United States District Court for the Eastern District of Michigan of laundering money instruments. He also had been convicted in the United States District Court for the Middle District of Florida of one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine and two counts of interstate travel to facilitate a cocaine conspiracy. Mezy appealed, arguing that the Oakland County indictment violated double jeopardy protections. The Court of Appeals, MICHAEL J. KELLY, P.J., and CAVANAGH and M. J. SHAMO, JJ., reversed (Docket No. 143092). The people appeal.

Issam Hermiz was convicted by a jury in the Oakland Circuit Court, Richard D. Kuhn, J., of conspiracy to possess with intent to deliver in excess of 650 grams of cocaine. Previously, Hermiz had been convicted in the United States District Court for the Middle District of Florida of conspiring to possess with intent to distribute five kilograms or more of cocaine. Hermiz also appealed, citing double jeopardy protections. The Court of Appeals, CORRIGAN, P.J., and J. B. SULLIVAN and N. O. HOLOWKA, JJ., affirmed in an opinion per curiam (Docket No. 147116). The defendant appeals.

In an opinion by Justice WEAVER, joined by Justices BOYLE and RILEY, and an opinion by Chief Justice BRICKLEY, the Supreme Court *held*:

Remand is required to permit the trial court to consider whether these successive prosecutions were prohibited by MCL 333.7409; MSA 14.15(7409).

1. MCL 333.7409; MSA 14.15(7409) applies only to controlled substances crimes and is a complete bar to dual prosecution for the same act. The defendant bears the burden of production and persuasion to prevail on the argument that the statute applies. The gist of the crime of conspiracy is the agreement of the conspirators

to commit one or more unlawful acts, where one or more of the conspirators do any act to effect the object of the conspiracy. In order to determine the extent of the agreement, i.e., whether there are two conspiracies or only one, the same totality-of-the-circumstances test used in constitutional double jeopardy analysis is applied, including: time, the persons acting as coconspirators, the statutory offenses charged, the overt acts charged or any other description of the offenses charged that indicate the nature and scope of the activity sought to be punished in each case, and the places where the events alleged as part of the conspiracy took place. The essence of the determination is whether there is one agreement to commit two crimes or more than one agreement, each with a separate object.

2. In *Hermiz*, while the prosecution improperly vouched for the credibility of its witness, and no corrective instruction was given following a defense objection, the prosecutor's misconduct was harmless.

Justice WEAVER, joined by Justices BOYLE and RILEY, additionally stated that the Michigan Constitution and the United States Constitution do not prohibit successive state and federal prosecutions. Successive state and federal prosecutions do not violate the Fifth Amendment. A defendant who has violated both state and federal laws is liable to, and subject to prosecution by, each sovereign. Unless there is a compelling reason to afford greater protection under the Michigan Constitution, the Michigan and federal provisions will be treated as affording the same protections. Because state and federal governments may punish the same offenses, neither defendant's subsequent state prosecution violated the double jeopardy provisions of the Michigan or United States Constitution.

Because the defendants clearly met the initial burden of establishing a prima facie nonfrivolous claim of double jeopardy, the burden shifted to the government to demonstrate by a preponderance of the evidence why double jeopardy principles do not bar prosecution. The government did not meet its burden, failing to provide sufficient information to show by a preponderance of the evidence that the offenses were distinct. Thus, for purposes of the double jeopardy claim, it must be assumed that the federal and state conspiracies are the same.

Chief Justice BRICKLEY, concurring in part and dissenting in part, stated that several factors appear to suggest that the defendants were not prosecuted twice for the same act. The alleged conspiracies were separate in time, although there was an overlap of some two years. The persons involved in each conspiracy were different,

although again there was some overlap. The charged offenses were the same, consisting of the conspiracy to possess cocaine with the intent to distribute it, although the amounts charged were different. The overt acts varied greatly between the indictments. The locales of the offenses also differed. Finally, the conspiracies differed in scope, with one aiming at large-scale national distribution and the other at local, street-level transactions. However, because the Supreme Court has not previously addressed the burden of proof, it is appropriate to remand to allow the trial court to apply the correct burden.

Because these cases can be decided on statutory grounds, it is unnecessary to reach the constitutional question of double jeopardy that invites review of *People v Cooper*, 398 Mich 450 (1976). It is also unnecessary to reach *Cooper* because double jeopardy is not implicated by the facts.

*Mezy*, reversed and remanded.

*Hermiz*, affirmed in part and remanded.

Justice LEVIN, joined by Justices CAVANAGH and MALLETT, dissenting, would remand to the trial court to evaluate the defendant's claims that the statutory double jeopardy provision, § 7409 of the Public Health Code, barred the Michigan prosecutions, making it unnecessary for the Supreme Court to consider in these cases the proposal to overrule *People v Cooper*. Defendant Mezy's federal indictment and plea do have a bearing on the statutory or constitutional double jeopardy analysis.

In determining whether there are one or more conspiracies, the Supreme Court should examine the United States Supreme Court's decision in *Brown v Ohio*, 432 US 161 (1977), in which the Court held that greater and lesser included offenses must be considered the same for federal constitutional double jeopardy analysis, and that whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense. Thus, if one conspiracy is encompassed by another for constitutional double jeopardy analysis, prosecution is barred by § 7409, which uses the broader term "act" to describe when prosecution of the charge also would be barred in the federal courts as the same "offense." As *Brown* makes clear, even if a trial of the smaller subset of allegations is held first, it bars a second prosecution for the larger scope of the offense.

Because the Supreme Court today announces a new standard for review of these statutory claims, there are no findings of fact employing that standard to review. Remand for further fact finding therefore is necessary.

208 Mich App 545; 528 NW2d 783 (1995) reversed.

207 Mich App 449; 526 NW2d 1 (1994) affirmed in part.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Robert C. Williams,* Assistant Prosecuting Attorney, for the people.

*Laurence R. Imerman* for defendant Mezy.

*Domnick J. Sorise* for defendant Hermiz.

Amicus Curiae:

*Michael D. Thomas,* President, *John D. O'Hair,* Wayne County Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

WEAVER, J. The question presented in these consolidated criminal appeals is whether Michigan was barred from indicting these defendants for conspiracy to possess with intent to deliver in excess of 650 grams of cocaine when they had previously been convicted in federal court of conspiracy to possess with intent to distribute more than five kilograms of cocaine and interstate travel to facilitate a cocaine conspiracy. We would hold that the Michigan Constitution, as the United States Constitution, does not prohibit successive state and federal prosecutions. In so holding, we would overrule *People v Cooper,* 398 Mich 450; 247 NW2d 866 (1976). We would remand to allow the trial court to consider whether these successive prosecutions were prohibited by MCL 333.7409; MSA 14.15(7409).

I

*HERMIZ*

In October, 1989, Issam Hermiz was indicted in federal court in the middle district of Florida for conspiring to possess with intent to distribute five kilograms or more of cocaine, 21 USC 841(a)(1). Hermiz was convicted as charged and sentenced to a prison term of 211 months. In July, 1990, Hermiz was indicted in Oakland County, Michigan, for conspiracy to possess with intent to deliver in excess of 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). After a jury trial, Hermiz was convicted as charged and sentenced to life imprisonment without parole. Hermiz appealed, arguing that the Oakland County indictment violated the double jeopardy prohibition. The Court of Appeals affirmed Hermiz' conviction.[1] This Court granted leave to appeal.[2] We affirm in part and remand with instructions.

*MEZY*

In August, 1988, Basil Mezy was indicted in federal court of the eastern district of Michigan for conspiracy to possess with intent to distribute more than four kilograms of cocaine, 21 USC 841(a)(1) and 846.[3] Mezy pleaded guilty of laundering money instruments,

---

[1] 207 Mich App 449; 526 NW2d 1 (1994).

[2] 450 Mich 871 (1995).

[3] 21 USC 841(a)(1) provides:

(a) Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

18 USC 1956(a)(2)(B)(ii)[4] in exchange for a dismissal of the conspiracy charge. He was sentenced to thirty-three months in federal prison.

In June, 1989, Mezy was indicted in federal court for the middle district of Florida for conspiracy to possess with intent to distribute more than five kilograms of cocaine, 21 USC 841(a)(1) and 846, and interstate travel to facilitate a cocaine conspiracy, 18 USC 1952(a)(3). Mezy was convicted of one count of the former and two counts of the latter. Mezy was sentenced to concurrent prison terms of twenty-two and five years. These terms are to run consecutively to the money-laundering sentence.

In July, 1990, Mezy was charged in Oakland Circuit Court with conspiracy to possess with intent to deliver more than 650 grams of cocaine, MCL

---

[4] 18 USC 1956(a)(2)(B)(ii) provided:

Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

\*          \*          \*

(B) knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part—

\*          \*          \*

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of $500,000 or twice the value of the monetary instrument or funds involved in the transportation, whichever is greater, or imprisonment for not more than twenty years, or both.

333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i).[5] Mezy
was subsequently convicted as charged and received
the mandatory sentence of life imprisonment without
parole. Mezy appealed, arguing that the Oakland
County indictment violated the double jeopardy pro-
hibition. The Court of Appeals, relying on the convic-
tion in the federal court for the eastern district of
Michigan, reversed Mezy's conviction.[6] This Court
granted leave to appeal.[7] We would reverse and
remand with instructions:

II

In Mezy's case the first issue is whether, for pur-
poses of a double jeopardy analysis, we should con-
sider the charge on which Mezy was indicted in the
Eastern District of Michigan, conspiracy to possess
with intent to deliver more than four kilograms of
cocaine, or the charge to which he pleaded guilty,
laundering money instruments. We follow the federal
rule and hold that a prosecution on charges dismissed
pursuant to a plea agreement does not violate the
Double Jeopardy Clause where the newly charged
offense is a different offense for double jeopardy pur-
poses than the crime to which the defendant has
pleaded guilty. See *United States v Garner*, 32 F3d

---

[5] MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) provides:

A person who violates this section as to:
   (a) A controlled substance classified in schedule 1 or 2 that is a
narcotic drug described in section 7214(a)(iv) and:
   (i) Which is in an amount of 650 grams or more of any mixture
containing that substance is guilty of a felony and shall be impris-
oned for life.

[6] 208 Mich App 545; 528 NW2d 783 (1995).
[7] 450 Mich 871 (1995).

1305, 1311, n 6 (CA 8, 1994); *United States v Rivera-
Feliciano*, 930 F2d 951, 953-954 (CA 1, 1991);[8] see
also *Ricketts v Adamson*, 483 US 1, 8; 107 S Ct 2680;
97 L Ed 2d 1 (1987) (the Court noted that a plea of
guilty for a lesser included offense generally would
have precluded a charge of the greater offense on
double jeopardy grounds except for the fact that the
defendant violated his plea agreement). Jeopardy
does not attach to charges dismissed as part of a plea
agreement. *Garner, supra* at 1311, n 6. *United States
v Vaughan*, 715 F2d 1373, 1376-1377 (CA 9, 1983).
Thus, we may consider only the charge to which
Mezy pleaded guilty, laundering money instruments,
not the charge on which he was indicted. This prior
conviction of laundering money instruments raises no
double jeopardy issues under either the statute or the
constitution with respect to Mezy's state court indict-
ment for conspiracy to possess with intent to deliver
more than 650 grams of cocaine. See *United States v
Felix*, 503 US 378, 388-389; 112 S Ct 1377; 118 L Ed 2d
25 (1992) (a substantive crime and a conspiracy to
commit that crime are not the same offense for
double jeopardy purposes).[9]

---

[8] Of course, a defendant could bring a claim that this newly charged
offense violated the terms of his plea agreement. *Rivera-Feliciano, supra*
at 952, n 1. However, such an argument would be of no avail for Mezy in
this case because he entered his plea agreement with the United States
and cannot then ask that this agreement prevent the State of Michigan,
not a party to the agreement, from prosecuting him.

[9] The dissent suggests that the Federal District Court for the Eastern
District of Michigan may have dismissed the drug conspiracy charges
"with prejudice" when it accepted Mezy's plea of guilty on money launder-
ing. See *post* at 305. There is no support in the record for this assertion.
Even if this were true, this would not assist Mezy because a dismissal
with prejudice is not an "acquittal" under § 7409, and under *Garner,
supra*, double jeopardy does not attach to charges dismissed with
prejudice. Dismissal "with prejudice" is only an acquittal for double jeop-

III

Both defendants assert that their Oakland Circuit Court indictments were barred under the Michigan Constitution's Double Jeopardy Clause, relying on *People v Cooper*, *supra*. The information regarding the federal convictions is very sparse. In considering whether there are one or two conspiracies for purposes of the Double Jeopardy Clause, the following factors are considered: time, persons acting as coconspirators, statutory offenses charged in indictments, overt acts charged by government, and places where events alleged as part of conspiracy took place. *United States v Thomas*, 759 F2d 659 (CA 8, 1985). The defendants clearly met the initial burden of establishing a prima facie nonfrivolous claim of double jeopardy. This was done primarily by showing the similarity of the charges, and the substantial overlap in time of the two conspiracies charged. Thus, the burden shifted to the government to demonstrate by a preponderance of the evidence why double jeopardy principles do not bar prosecution. *United States v Schinnell*, 80 F3d 1064, 1066 (CA 5, 1996).[10] The peo-

---

ardy purposes " 'when the ruling of the judge, whatever its label, actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged' . . . ." *United States v Lindsey*, 310 US App DC 300, 304; 47 F3d 440, 444 (1995), quoting *United States v Scott*, 437 US 82, 97; 98 S Ct 2187; 57 L Ed 2d 65 (1978).

[10] Defendant Schinnell illegally withdrew funds from her employer's bank accounts for personal use. The government instituted and completed administrative forfeiture proceedings pursuant to 18 USC 981(a)(1)(C), which Schinnell did not contest. Subsequently Schinnell entered a conditional plea of guilty to wire fraud, reserving her right to appeal on double jeopardy grounds on the basis of her prior administrative forfeiture. The district court denied her motion to dismiss the indictment because it found that she did not show how the forfeiture action had in some manner placed her twice in jeopardy for a criminal offense. Schinnell appealed, arguing that the district court erred in allocating the burden of

ple failed to meet this obligation, because not enough information was provided to show by a preponderance of the evidence that the offenses were distinct. The people have not demonstrated that the trial court committed any clear error in its findings of fact, or that it erred in its application of the constitutional test under *Thomas* in concluding that the people failed to carry their burden. Thus, for purposes of the constitutional double jeopardy claim, we must assume that the federal and state conspiracies are the same. This leads us to address, as requested by the plaintiffs, the continuing validity of *Cooper.*

The United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." US Const, Am V. The United States Supreme Court has consistently held that successive state and federal prosecutions are not a violation of the Fifth Amendment. *Bartkus v Illinois*, 359 US 121, 132; 79 S Ct 676; 3 L Ed 2d 684 (1959). The reasoning behind this holding was clearly set out in *Heath v Alabama*, 474 US 82, 88; 106 S Ct 433; 88 L Ed 2d 387 (1985).

> The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences." As the Court explained in *Moore v Illinois* [55

---

proof to the defendant on the double jeopardy issue. The United States Court of Appeals for the Fifth Circuit found that the correct standard was to make "the defendant bear[ ] the initial burden of establishing a prima facie nonfrivolous claim of double jeopardy, after which the burden shifts to the government to demonstrate by a preponderance of the evidence why double jeopardy principles do not bar prosecution," citing *United States v Deshaw*, 974 F2d 667, 670 (CA 5, 1992).

US] (14 How) 13, 19; 14 L Ed 306 (1852), "[a]n offence, in
its legal signification, means the transgression of a law."
Consequently, when the same act transgresses the laws of
two sovereigns, "it cannot be truly averred that the offender
has been twice punished for the same offence; but only that
by one act he has committed two offences, for each of
which he is justly punishable." [Citations omitted.]

The language of the Michigan Constitution's double
jeopardy provision is substantially similar to that of
the United States Constitution. The Michigan Consti-
tution was amended in 1963 to provide: "No person
shall be subject for the same offense to be twice put
in jeopardy." Const 1963, art 1, § 15. Before 1962, the
wording of Michigan's Double Jeopardy Clause was,
"No person, after acquittal upon the merits, shall be
tried for the same offense." Const 1908, art 2, § 14.

When construing a constitution, the Court's task is
to "divine the 'common understanding' of the provi-
sion, that meaning 'which reasonable minds, the great
mass of the people themselves, would give it.' " *Peo-
ple v Nash*, 418 Mich 196, 209; 341 NW2d 439 (1983).
Relevant considerations include the constitutional
convention debates, the address to the people, the
circumstances leading to the adoption of the provi-
sion, and the purpose sought to be accomplished. *Id.*
at 209.

At the 1961 Constitutional Convention a delegate
stated that the Supreme Court of Michigan virtually
had held the prior provision to mean "the same thing
as the provision in the federal constitution, which is
what we have put in . . . ." Another delegate
expressly agreed that the change in the language
would make no change "in the rule we have hitherto
had." 1 Official Record, Constitutional Convention

1961, p 539. In light of this clear expression of intent by the convention delegates that there be no change in the then-existing case law, we find it significant that in 1958 this Court had held, "When a defendant has violated both State and Federal laws he is liable to each sovereign and subject to prosecution by each." *In re Illova*, 351 Mich 204, 209; 88 NW2d 589 (1958).[11]

In 1976 this Court held that this constitutional provision "prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different." *People v Cooper, supra* at 461. Finding the case to have been wrongly decided, we would overrule *People v Cooper*.

*Cooper* stated that it questioned the continued validity of United States Supreme Court decisions,[12] and therefore the Court "preferred to rest the deci-

---

[11] As this Court noted in *Cooper, Illova* was subsequently overruled by *In re Carey*, 372 Mich 378, 381; 126 NW2d 727 (1964), to the extent that it disagreed with *Carey*'s holding that "where a defendant has been sentenced in Federal court, and is subsequently sentenced in a State court or courts, sentence may not be imposed to commence at the completion or expiration of Federal sentence, in the absence of statutory authority." However, there is no reason to suppose that *Illova* was not an accurate expression of the state of the case law on double jeopardy at the time of the Constitutional Convention, which is the relevant issue for our purposes.

[12] We note that in 1976 this was a very plausible position. "Scholarly analysis of the dual sovereignty exception was almost uniformly critical, and the decisions described above [*Elkins v United States*, 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960), and *Murphy v Waterfront Comm of New York Harbor*, 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964)] suggest that the Court was moving in the same direction as the commentators. Indeed, the general thrust of the decisions of the 1960's led at least one commentator to suggest that the Supreme Court might well abandon the dual sovereignty exception." Murchison, *The dual sovereignty exception to double jeopardy*, 14 NYU R Law & Social Change 383, 419 (1986).

sion on our state constitution."[13] In so doing this Court failed to follow the general rule that "[u]nless there is a compelling reason to afford greater protection under the Michigan Constitution, the Michigan and federal provisions will be treated as affording the same protections." *People v Perlos*, 436 Mich 305, 313, n 7; 462 NW2d 310 (1990).

We would now join the overwhelming majority of state courts that recognize the validity of dual federal and state convictions.[14] In accordance with this recognition that state and federal governments may punish the same offenses, we would hold that neither defendant's subsequent state prosecution violated the double jeopardy provisions of the Michigan or United States Constitution.

---

[13]  Although the United States Supreme Court's treatment of the rational underpinnings of *Bartkus* leads us to question seriously its current vitality, it has not been expressly overruled. Therefore, we have preferred to rest the decision on our state constitution. In doing so, we have, appropriately, "assign[ed] proper weight to opposing interests and give[n] some consideration to public policy." [*Cooper, supra* at 461.]

[14] The majority of states hold that both the United States and their own constitutions allow for dual prosecutions by the state and federal governments. *Nance v State*, 123 Ga App 410; 181 SE2d 295 (1971), *Hall v Commonwealth*, 197 Ky 179; 246 SW 441 (1923), *State v Castonguay*, 240 A2d 747 (Me, 1968), *Bankston v State*, 236 So 2d 757 (Miss, 1970), *State v Turley*, 518 SW2d 207 (Mo App, 1974), *State v Pope*, 190 Neb 689; 211 NW2d 923 (1973), *State v Cooper*, 54 NJ 330; 255 A2d 232 (1969), and *Breedlove v State*, 470 SW2d 880 (Tex Crim App, 1971). Others rely on the federal constitution or merely cite *Bartkus* for the principle of dual sovereignty. *State v Duncan*, 221 Ark 681; 255 SW2d 430 (1953), *State v Tiche*, 33 Conn Supp 51; 360 A2d 135 (1976), *Richardson v State*, 163 Ind App 222; 323 NE2d 291 (1975), *Bell v State*, 22 Md App 496; 323 A2d 677 (1974), *Crane v State*, 92 Nev 593; 555 P2d 845 (1976), *State v Fletcher*, 26 Ohio St 2d 221; 271 NE2d 567 (1971), *Beard v State*, 485 SW2d 882 (Tenn, 1972), and *State ex rel Cullen v Ceci*, 45 Wis 2d 432; 173 NW2d 175 (1970). But see, contra, *State v Hogg*, 118 NH 262; 385 A2d 844 (1978), and *Commonwealth v Mills*, 447 Pa 163; 286 A2d 638 (1971).

IV

Defendants also assert that their Oakland Circuit Court indictments were barred by MCL 333.7409; MSA 14.15(7409), arguing that the indictments in state court arose out of the same acts on which their convictions in the Florida federal court were based. MCL 333.7409; MSA 14.15(7409), enacted in 1978, applies only to controlled substance crimes. Section 7409 reads:

> If a violation of this article is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.

As of the fall of 1995, twenty-six states had enacted some form of statute barring subsequent prosecutions. Bollinger, *Defending dual prosecutions: Learning how to draw the line,* 10 Crim Just 16, 18 (Fall, 1995).

A

In enacting MCL 333.7409; MSA 14.15(7409) the Legislature was not codifying the rule set forth in *People v Cooper, supra,* as can be seen by the significant differences between the statute and case law. *Cooper* applies to all criminal offenses, while § 7409 concerns only controlled substances. *Cooper* allows for dual prosecution when the state's interest is not protected by the federal prosecution, while § 7409, by contrast, is a complete bar to dual prosecution.

B

We would hold that the defendants bear the burden both of production and persuasion to prevail on their

argument that the statute applies to bar a second
prosecution. As a general rule, this Court has the
power to allocate the burden of proof. *People v
D'Angelo*, 401 Mich 167, 182; 257 NW2d 655 (1977).
Because the statute does not state who shall bear the
burden of proof, we are free to assign it as we see fit,
as long as we do not transgress the constitutional
requirement that we not place on the defendant the
burden of persuasion to negate an element of the
crime. *Patterson v New York*, 432 US 197; 97 S Ct
2319; 53 L Ed 2d 281 (1977); *People v Pegenau*, 447
Mich 278, 317; 523 NW2d 325 (1994) (BOYLE, J., con-
curring in the result). This statutory exclusion does
not call into question defendant's guilt or innocence.
The defendant is alleging that he should be insulated
from prosecution regardless of whether he is guilty.
MCL 333.7531; MSA 14.15(7531) provides:

> It is not necessary for this state to negate any exemption
> or exception in this article in a complaint, information,
> indictment, or other pleading or in a trial, hearing, or other
> proceeding under this article. The burden of proof of an
> exemption or exception is upon the person claiming it.

As in *People v Pegenau, supra,* defendant is
attempting to establish an exemption or exception to
a controlled substances offense. In this situation, the
presence of a conviction or acquittal under federal
law or the law of another state for the same act is
analogous to an affirmative defense. *Id.* at 289. Thus,
it is appropriate to place the burden of proof by a
preponderance of the evidence on the defendant. See
*D'Angelo, supra* at 182.[15]

---

[15] In *People v D'Angelo*, this Court allocated the burden of proof for
showing the defense of entrapment to the defendant.

C

We are asked to determine whether the statute prohibits the state's prosecution of defendants. The key phrase in § 7409 is "the same act." In this, the statute differs from the United States and Michigan Constitutions, both of which discuss the same *offense.*

New Jersey has an almost identical statute,[16] which was applied in *State v Ableman,* 72 NJ 145; 368 A2d 356 (1977). In that case the defendant had been convicted in federal court of conspiracy to distribute and to possess with intent to distribute hashish, and of possession with intent to distribute hashish. The issue presented to the court was whether the statute barred subsequent state prosecution of a charge of unlawful distribution of hashish. As explained in the concurring opinion, the court ruled that "where a defendant involved in a large-scale operation of illegal drug traffic pleads guilty of possession with intent to distribute a great quantity of narcotics in a federal court located in a foreign state, [the statute] does not stand as a bar to a State prosecution for distribution of a portion of those narcotics." *Id.* at 151 (Pashman, J., concurring in the result).

The gist of the crime of conspiracy is the agreement of the conspirators to commit one or more unlawful acts, where one or more of the conspirators do "any act to effect the object of the conspiracy." *Braverman v United States,* 317 US 49, 53; 63 S Ct 99;

---

[16] NJ Stat Ann 24:21-25 provides in part:

In any case where a violation of this act (Uniform Drug Act) is violation of a Federal law or the law of any state, the conviction or acquittal under Federal law or the law of another state for the same act is a bar to prosecution in this State.

87 L Ed 23 (1942). In order to determine what the extent of the agreement is, so that we may determine whether there are two conspiracies or only one, we will use the same "totality of the circumstances" test used in constitutional double jeopardy analysis. This test includes the following factors: 1) time, 2) persons acting as coconspirators, 3) the statutory offenses charged in the indictments, 4) the overt acts charged by the government or any other description of the offenses charged that indicate the nature and scope of the activity that the government sought to punish in each case, and 5) places where the events alleged as part of the conspiracy took place. The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement each with a separate object. *United States v Thomas, supra.*

Because this is the first time this Court has addressed the burden of proof for MCL 333.7409; MSA 14.15(7409), and the lower courts did not fully address the applicability of the statute, we remand to allow the trial court to hold any further proceedings necessary and make a determination of whether there were multiple conspiracies.

V

Defendant Hermiz argues that in his rebuttal at closing arguments the prosecution improperly vouched for the credibility of its witnesses. Defendant objected to this argument at trial. The trial judge merely noted defendant's objection and did not give corrective instructions. Although we agree that the prosecutor's conduct was improper, we would affirm Hermiz' conviction because we find the misconduct

to be harmless. Review of the record convinces us
that the error had only slight or negligible influence
on the verdict. Therefore, the error was harmless.
*People v Mateo*, 453 Mich 203, 221; 551 NW2d 891
(1996).

CONCLUSION

We would affirm in part the opinion of the Court of
Appeals affirming defendant Hermiz' conviction,
reverse the Court of Appeals opinion vacating defend-
ant Mezy's conviction, and remand for further pro-
ceedings. We do not retain jurisdiction.

BOYLE and RILEY, JJ., concurred with WEAVER, J.

BRICKLEY, C.J. (*concurring in part and dissenting
in part*). I agree with the decision of the lead opinion
to remand the case so that the trial courts may deter-
mine whether there were multiple conspiracies for
purposes of the statute under the newly articulated
burden of proof. Accordingly, I concur with parts I, II,
IV and V of the lead opinion. However, I am unable to
support the decision to overrule this Court's opinion
in *People v Cooper*, 398 Mich 450; 247 NW2d 866
(1976). I therefore dissent from part III of the lead
opinion.

I concur with the decision to remand even though
several factors appear to suggest that the defendants
were not prosecuted twice for the same act. The
alleged conspiracies were separate in time, although
there was an overlap of some two years. The persons
involved in each conspiracy were different, although
again there was some overlap. The charged offenses
were the same, consisting of the conspiracy to pos-
sess cocaine with the intent to distribute it, although

the amounts charged were different. The overt acts varied greatly between the indictments. The locales of the offenses also differed. Finally, the conspiracies differed in scope, with one aiming at large-scale national distribution and the other at local, street-level transactions. However, because this Court has not previously addressed the burden of proof, it is appropriate to remand to allow the trial court to apply the correct burden.

In *Cooper*, this Court held that the Michigan Constitution forbids a second prosecution for the same offense by the state unless the interests of the state and the initial prosecutor are "substantially different." *Id.* at 462. Whether or not the members of this Court feel that the case was wrongly decided, principles of stare decisis require its continued vitality until and unless review is required for the resolution of the case before us. The instant cases may be decided on statutory grounds, making it unnecessary to reach the constitutional question of double jeopardy that invites review of *Cooper*. On remand, the trial court may conclude that MCL 333.7409; MSA 14.15(7409) bars the second prosecutions of the defendants. If so, there will be no need to perform double jeopardy analysis.

It is also unnecessary to reach *Cooper* because double jeopardy is not implicated by the facts before us. The lead opinion does conclude that, for double jeopardy purposes, the defendants established a prima facie claim that the prosecutions were for the same offense and that the government then failed to demonstrate that prosecution was not barred. I would conclude that the defendants did not make a prima facie showing and that a preponderance of the evidence demonstrated that the offenses were distinct.

I dissent from the lead opinion's reliance on the overlap in time and the similarity of the charges to conclude that the defendants made an unrefuted prima facie showing that they were prosecuted twice for the same offense. *Ante* at 277. I cannot assign the same weight to these similarities as the lead opinion does. Unfortunately, far more persons are charged with identical drug offenses than could ever be linked together in one conspiracy. Similarly, many drug offenses occur at the same time without being connected. The overlap in the time and charges is more symptomatic of the drug problems in our society than of any connection between the offenses charged. The preponderance of the evidence before the Court demonstrates that the conspiracies were separate.

The evidence is sufficient to overcome the defendants' prima facie double jeopardy case—if, indeed, they made such a showing. Both lower courts should have held that the government met its burden of demonstrating that the conspiracies were separate. I would hold that there is no need for further double jeopardy analysis, so this Court need not address *Cooper*.

LEVIN, J. (*dissenting*). The question is whether the State of Michigan may prosecute the defendants for conspiracy to possess with intent to deliver in excess of 650 grams of cocaine after they had been prosecuted and convicted in federal court of similar offenses. We join with the signers of the lead opinion and the concurring opinion in remanding to the trial court to evaluate the defendants' claims that the stat-

utory double jeopardy provision, § 7409 of the Public Health Code,[1] barred the Michigan prosecutions.

This disposition may make it unnecessary for this Court to consider in the instant cases the proposal in part III of the lead opinion that this Court overrule *People v Cooper*, 398 Mich 450; 247 NW2d 866 (1976). Because the lead opinion states in part III why it would overrule *Cooper*, we respond stating why we would not do so.

We also disagree with the lead opinion's conclusion, in part II, that defendant Mezy's federal indictment and plea have no bearing on the statutory or constitutional double jeopardy analysis.

I

Section 7409 provides:

> If a violation of this article is a violation of federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.

As the lead opinion observes, § 7409 did not codify this Court's ruling in *Cooper*. Its reach is both more limited—it only applies to violations of the Public Health Code—and less limited—it does not state the exceptions enumerated in *Cooper* that might allow a subsequent prosecution in some cases.

The Legislature expressed its concern with successive prosecutions by enacting § 7409 of the Public Health Code. Other states have enacted similar provisions under the Uniform Controlled Substances Act.[2]

---

[1] MCL 333.7409; MSA 14.15(7409).

[2] New Jersey, Ohio, Alabama, Arkansas, North Carolina, and Tennessee are among the states that have enacted a version of this statute. NJ Stat

Similarly, the Attorney General of the United States promulgated what has come to be known as the *Petite* policy, a general prohibition of federal prosecutions following a state prosecution absent approval from an assistant attorney general of the United States.[3]

The rationale for the *Petite* policy respecting successive federal and state prosecutions is informative regarding the legislative intent in enacting § 7409. The United States Supreme Court said that "[t]he overwhelming purpose of the *Petite* policy is to protect the individual from any unfairness associated with needless multiple prosecutions."[4]

Additionally, § 7409 can be seen as a measure to conserve resources. If the federal government has already made expenditures to investigate, prosecute, and incarcerate a defendant, a second prosecution,

---

Ann 24:21-1; Ohio Rev Code Ann 2925.50; Ala Code 20-2-77; Ark Stat Ann 5-64-405; NC Gen Stat 90-97; Tenn Code Ann 53-11-404 (repealed in 1990).

The Model Penal Code suggests codifying double jeopardy principles for all criminal offenses. Model Penal Code and Commentaries, § 1.10, pp 167-178. A number of states have adopted some form of this prohibition. E.g., Alas Stat 12.20.010; 18 Pa Cons Stat Ann 111; NY Crim P 40.20.

[3] Shortly after the United States Supreme Court's decision in *Abbate v United States*, 359 US 187; 79 S Ct 666; 3 L Ed 2d 729 (1959), affirming the right of the federal government to initiate prosecution after a state trial, the Attorney General instructed all United States Attorneys to make an effort to coordinate with local law enforcement and prosecute a defendant in the most appropriate forum. The United States Supreme Court noted this policy *Petite v United States*, 361 US 529; 80 S Ct 450; 4 L Ed 2d 490 (1960). See 3 LaFave & Israel, Criminal Procedure, § 24.5, p 100.

The federal courts have ruled that the *Petite* policy is an internal guideline of the Department of Justice that provides no substantive rights for defendants to challenge a violation of the policy. See, e.g., *United States v Pungitore*, 910 F2d 1084, 1120 (CA 3, 1990). In Michigan, however, the policy respecting drug offenses is statutory, providing defendants with an opportunity to challenge a prosecution that violates § 7409.

[4] *Rinaldi v United States*, 434 US 22, 31; 98 S Ct 81; 54 L Ed 2d 207 (1977).

with duplicate costs of investigation, prosecution, and incarceration can be seen by a legislature as wasteful.

Alabama has provided another reason for its version of this statute.

> One of the purposes of enacting the Alabama Controlled Substances Act was "to standardize all laws in this State to be in conformity with the new Federal Comprehensive Drug Abuse Prevention and Control Act of 1970." Clearly the purpose and intent of Section 20-2-77 is to bar a state prosecution when the defendant has been previously convicted in federal court (or the court of another state) for the same act.[5]

These legislative goals protect citizens from continual harassment, coordinate federal and state drug prosecutions, and protect the taxpayers from unnecessary costs.

The lead opinion quotes from the concurring opinion in *State v Ableman*, 72 NJ 145; 368 A2d 356 (1977).[6] The majority in *Ableman* affirmed the reasoning of the lower court, which had cited with approval *State v Krell*, 125 NJ Super 457, 461-462; 311 A2d 399 (1973). In *Krell*, the judge said:

> The four sections preceding section 25 [the comparable New Jersey statutory provision], under captions reading "Prohibited Acts," expressly set forth what acts are unlawful . . . . Since, therefore, the act expressly sets forth the acts which are unlawful, it follows that what is meant by the "same act" specified in section 25 is any act expressly prohibited by the preceding sections 19 through 22.

---

[5] *Barnett v State*, 373 So 2d 1226, 1228 (Ala Crim App, 1979).

[6] *Ante* at 284.

Because the defendants in *Krell* had not been charged in federal court with distribution of narcotics, one of the four acts listed in the New Jersey statute, the superior court held that they could face state prosecution on that charge. A conspiracy charge was barred, however, because of an earlier federal prosecution for conspiracy, and the state charges of possession and possession with intent to distribute were barred by the federal prosecution for possession with intent to distribute.

The New Jersey court thus took a common-sense approach to the definition of "same act." Similarly, Michigan's statute should be read to prohibit prosecutions for conspiracy in Michigan when the federal prosecution is for the same conspiracy, even if the federal conspiracy is broader and partly, though not exclusively, includes the conduct in Michigan.

A

The lead opinion begins its statutory analysis stating, "The key phrase in § 7409 is 'the same act.' In this, the statute differs from the United States and Michigan Constitutions, both of which discuss the same *offense*."[7] Although noting this "key" difference, the lead opinion provides no explanation of its significance. Insight can be gained from Justice COLEMAN's concurrence in *Cooper*. She disagreed with part of the rationale of the majority, stating:

> I would *narrow* the rule accepted from *Commonwealth v Mills*, 447 Pa 163; 286 A2d 638 (1971), which "prohibits a second prosecution for an offense arising out of the same

---

[7] *Ante* at 284 (emphasis in original).

criminal *act*" to one which "prohibits a second prosecution
for the same *offense*." [*Cooper* at 463 (emphasis added).]

Tennessee applied a similar analysis when constru-
ing its statutory double jeopardy bar.

> It is apparent that the Tennessee Drug Control Act of
> 1971 was enacted to compliment the then existing federal
> laws regarding drug control and that [Tenn Code Ann] 53-
> 11-404 was included to effectuate that purpose. The provi-
> sion that bars prosecution for the "same act" necessarily
> contemplates that the different jurisdictions may prohibit
> an act by means of defining offenses differently while still
> protecting the same interests, i.e., criminalizing drug traf-
> ficking. . . . TCA 53-11-404 requires a factual analysis to
> determine whether or not a person is being prosecuted for
> an offense based upon an act when such act was an offense
> or was included in an offense in another jurisdiction and·
> for which act that person has previously been convicted or
> acquitted. [*State v Mongiove*, 1991 Tenn Crim App LEXIS
> 77, *18.]

B

The signers of the lead opinion rely on federal
cases for assistance in articulating a standard for
determining whether there are one or more conspira-
cies.[8] The Court should also look to the United States
Supreme Court's decision in *Brown v Ohio*, 432 US

---

[8] While the totality of the circumstances test outlined in the lead opin-
ion is useful, it should not finish the inquiry whether these defendants
were prosecuted for the "same act." Other states have held that federal
conspiracy charges bar prosecution for an in-state conspiracy when the
two involve the same set of criminal acts, even if the federal conspiracy
was broader in scope. *Krell, supra; Commonwealth v Savage*, 388 Pa
Super 561; 566 A2d 272 (1989); *People v Abbamonte*, 43 NY2d 74; 400
NYS2d 766; 371 NE2d 485 (1977). Thus, while we do not disagree with the
test outlined in the lead opinion, that federal test might not be sufficient
to adequately implement the legislative intent to bar successive federal
and state drug prosecutions.

161, 168-169; 97 S Ct 2221; 53 L Ed 2d 187 (1977), in which this Court held that greater and lesser included offenses must be considered the "same" for federal constitutional double jeopardy analysis, and that "[w]hatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." Thus, if one conspiracy is encompassed by another for constitutional double jeopardy analysis, prosecution is barred by § 7409, which uses the broader term "act" to describe when prosecution of the charge also would be barred in the federal courts as the same "offense." As *Brown* makes clear, even if a trial of the smaller subset of allegations is held first, it bars a second prosecution for the larger scope of the offense.

C

I agree with the Court of Appeals in *Mezy* and the lead opinion that the "totality of the circumstances" test is useful in applying Michigan's bar against double jeopardy, both under the statute and the state constitution. The United States Court of Appeals for the Eighth Circuit emphasized in *United States v Thomas*, 759 F2d 659, 662 (CA 8, 1985), immediately after listing the five factors cited in the lead opinion that this is a comprehensive inquiry:

> These factors are guidelines only. The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object.
>
> We will therefore look beyond the indictments and consider all the evidence we have before us. This includes evidence adduced at the previous trial, evidence expected to be presented at the second trial, and information developed

at the evidentiary hearing conducted on the double-jeopardy issue.

The Court of Appeals in *Mezy* said, "[w]hile review de novo applies to a trial court's holdings concerning whether there was a single criminal transaction and whether the state interests are substantially distinct, . . . the court's findings of fact are reviewed for clear error."[9]

Because this Court is today announcing a new standard for review of Mezy's and Hermiz' statutory claims, there are no findings of fact employing that standard to review. Remand for further fact finding is therefore necessary.

D

The lead opinion, in explaining the test to be employed and the degree of proof needed to satisfy it,

---

[9] 208 Mich App 545, 551; 528 NW2d 783 (1995).

The concurring opinion suggests a resolution of the factual question being remanded to the trial court. Before an appellate court can adequately review a trial court's findings for clear error, it must first have the trial court's findings made under the proper standard. The record before this Court is insufficient to preemptively determine whether the defendants faced multiple prosecution for the same act.

Similarly, the concurring opinion also errs in finding, under the constitutional analysis, that these were separate conspiracies. The opinion does not discuss trial court findings of fact, made after that court heard the testimony in the state trials, reviewed both the federal and state indictments and accompanying exhibits, the federal and state statutes the defendants were found to have violated, the testimony of witnesses at the federal trial, the testimony before both the federal and state grand juries, the testimony taken during the preliminary examination and at a federal forfeiture proceeding, and the testimony during the evidentiary hearing on the double jeopardy claim.

The opinion does not attempt to explain away these findings of fact, made by the trial court "after laboriously considering all these factors." The clear error standard is designed to protect against an appellate judge hastily substituting his reaction to the generally limited evidence before him for the considered evaluation of a more informed trial court judge.

places the burden on the defendants to prove that the statutory bar applies.[10] I agree that the burden should be placed on the defendants under MCL 333.7531; MSA 14.15(7531).

We are of the opinion that the Court of Appeals in *Hermiz* erred in not employing the *Thomas* test for multiple conspiracies. Instead, it narrowly focused on language in *People v Sturgis*, 427 Mich 392, 401; 397 NW2d 783 (1986), that, under the state constitutional analysis, part of Michigan's broader "same transaction" test includes whether all the charges "demonstrate 'a single intent and goal.' "[11]

The Court of Appeals said that there was "no indication in the record that the 'single intent and goal' of the conspirators in Florida was to conspire to possess with intent to deliver more than 650 grams of cocaine in Michigan."[12] This analysis ignores the holding in *Brown* that a prosecution for a lesser included offense bars a subsequent prosecution for a greater offense.

If Mezy and Hermiz were prosecuted in Florida for the conspiracy to buy cocaine for distribution in Oakland County and elsewhere in Michigan, a prosecution in Oakland County for conspiracy to distribute that cocaine in that county would be a prosecution for the same offense. This is true even if others in the Florida prosecution were not solely focused on selling the cocaine in Oakland County. The Court of Appeals approach would produce the same anomaly

---

[10] *Ante* at 282-283.

[11] 207 Mich App 449, 451; 526 NW2d 1 (1994).

[12] *Id.* at 452.

in a conspiracy context that the United States Court of Appeals for the Eighth Circuit noted in *Thomas*:

> If [this test] is the sole standard used to determine whether multiple conspiracies exist, then prosecutors could drawn up [sic] two indictments and by skillfully choosing different sets of overt acts make one conspiracy appear to be two. [*Id.* at 662.][13]

II

Ignoring the rule of construction that constitutional questions should not be reached if a statutory analysis obviates the inquiry, the lead opinion proposes to overrule *Cooper*. In the circumstance that the lead opinion concludes that a remand is necessary to evaluate the statutory claim, there is no reason to reach *Cooper*. Because the lead opinion does so, I write to explain why we are of the opinion that the lead opinion errs in its analysis of *Cooper* and its proposal to overrule it.

The lead opinion proposes to overrule *Cooper* because it concludes that this Court failed to follow the "general rule" that, "[u]nless there is a compelling reason to afford greater protection under the Michigan Constitution, the Michigan and federal provisions will be treated as affording the same protections."[14]

---

[13] This also explains why *Brown v Ohio*'s discussion of greater and lesser included offenses also applies to greater and lesser factual conspiracies. The unique nature of a conspiracy prosecution justifies the broad test outlined in *Thomas*, rather than the traditional "same elements" test of *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). The essence of the analysis under *Thomas* and the other federal conspiracy tests is whether the agreement is for one, possibly extended, criminal enterprise, or more than one; it is not a narrow determination of the "intent and goal" of any one of the conspirators.

[14] *Ante* at 281, quoting *People v Perlos*, 436 Mich 305, n 7; 462 NW2d 310 (1990).

The "compelling reason" test was not announced until after *Cooper* was decided, and it has principally been employed in cases arising under the Fourth Amendment.

A review of the record and briefs in this Court when *Cooper* was decided demonstrates the error in the lead opinion's assertion. Marx Cooper's brief to this Court, as well as the briefs of amici curiae, all discussed the conflict between protecting an accused from being twice put in jeopardy and the dual sovereignty doctrine set forth in *Bartkus v Illinois*, 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959).

The defendant's brief not only addressed how the reasoning underlying *Bartkus* had been undermined by subsequent federal case law, but it also discussed why the Michigan Constitution should be read as providing stronger double jeopardy protections. The defendant also discussed some of the scholarly criticisms of the dual sovereignty doctrine (whether based on subsequent federal case law, the practical reasons for disagreeing with *Bartkus*, or constitutional/jurisprudential objections to trying someone twice for essentially the same act) and provided this Court with a comprehensive list of scholarly articles reviewing the dual sovereignty doctrine.[15]

The defendant in that case said, "It would be hard to find a practice more universally condemned by the legal scholars than this double jeopardy practice of successive federal-state trials for the same act."[16] This

---

[15] See defendant-appellant Marx Cooper's brief and appendix on appeal, No. 3, June term 1976, pp 23-25 for discussion, pp 87a-89a for citations of sources discussing the dual sovereignty principle.

[16] *Id.* at 23. The lead opinion acknowledges the criticism of the dual sovereignty doctrine in the legal community. *Ante* at 280, n 12.

Court was provided a full review of the case law and supplementary materials on this issue. This Court reviewed this material, made its decision, and chose to read the Michigan Constitution as prohibiting most successive state prosecutions. The lead opinion's bold but unsupported assertion that this Court failed to consider the issue before it and give proper deference to federal case law is clearly incorrect.

*Cooper* did not rely on an anticipated change in federal double jeopardy jurisprudence that has not occurred since *Cooper* was decided. While *Cooper* noted that the rationale in *Bartkus* had been undermined by subsequent cases, the Court *explicitly* stated that it was not resting its decision on what the United States Supreme Court had done or might do.[17] The Court based its opinion on the Michigan Constitution because it was persuaded that it requires the heightened protection of double jeopardy values.

There is no evidence in *Cooper* that this Court did not understand the consequences of its decision or that it acted on a whim. The opinion was reasoned and careful. Although the opinion did not use the words "compelling reason," the Court found significant, compelling merit in the criticisms of the dual sovereignty doctrine and the failure of that doctrine to protect the rights of the accused. The Court balanced the state's interests in prosecuting those who had broken the law and the defendant's right to avoid multiple prosecutions, and said: "We feel that the interests of the state and the defendant are best accommodated by the approach of the Pennsylvania Supreme Court in *Commonwealth v Mills*, 447 Pa 163;

---

[17] *Cooper*, 398 Mich 461.

286 A2d 638 (1971)."[18] While Justice COLEMAN did not fully agree with the reasoning in *Cooper*, she concurred in the result, making that decision to read the Michigan Constitution as barring multiple federal-state prosecutions unanimous.

Further support for the view that this Court thoughtfully and fully considered its decision and concluded that it should depart from the *Bartkus* construction appears in this Court's subsequent decisions affirming the result and the rationale in *Cooper*. In *People v Gay*, 407 Mich 681, 693-694; 289 NW2d 651 (1980), this Court said that, in *Cooper*, "we found that emerging Federal trends in recent years *and the dictates of our own Constitution* required us to impose limits on what dual sovereignty would permit. . . . [T]his Court also recognized the fundamental need to safeguard defendants' constitutional rights. We therefore prohibited dual prosecution where the interests of the state are not 'substantially different.' " (Emphasis added.) The Court stated the public policy reasons for its decisions, and said:

> *Cooper* represents a *strong and uncompromising* statement by this Court that a defendant's right not to be twice tried in Federal and state court for the same criminal act will be *jealously* guarded except in extreme cases where Federal laws are framed to protect substantially different social interests. . . . *Cooper* makes clear that as a *firm rule* dual prosecution ordinarily will not be tolerated in Michigan. . . . Further, since this safeguard of defendant's right against double jeopardy is of a constitutional magnitude, *it must receive this Court's close consideration*. [*Id.* at 694-695 (emphasis added).]

---

[18] 398 Mich 460.

Once again, while not all the members of the Court in *Gay* agreed with the application of the balancing of interests test outlined in *Cooper*, the Court unanimously upheld the rationale of *Cooper* and unanimously agreed it was necessary to apply the decision retroactively. This Court again unanimously reaffirmed the rationale of *Cooper* in *People v Formicola*, 407 Mich 293; 284 NW2d 334 (1979).

The lead opinion relies on *In re Illova*, 351 Mich 204; 88 NW2d 589 (1958), for the proposition that this Court had accepted the dual sovereignty principle before *Cooper* was decided. This Court distinguished *Illova* in *Cooper* as a case concerning jurisdiction, not double jeopardy.[19] Contrary to the lead opinion's claim, there is *every* "reason to suppose that *Illova* was not an accurate expression of the state of the case law on *double jeopardy* at the time of the Constitutional Convention . . . ."[20] (Emphasis added.)

The lead opinion also fails to accord proper deference to the principle of stare decisis. This Court once observed long ago:

> The rule of *stare decisis* establishes uniformity, certainty, and stability in the law, but it was never intended to perpetuate error or to prevent the consideration of rule of law to be applied to the ever-changing business, economic, and political life of a community. Only in the rare case when it is clearly apparent that an error has been made, or changing conditions result in injustice by the application of an

---

[19] The passage of time does not alter this conclusion. "The *jurisdictional* question presented in petitioner's brief, not controverted by the State, reads . . .

"The claim, then, is a loss of *jurisdiction* by the State when petitioner was transferred to the Federal authorities to serve the sentence imposed by the Federal courts." *In re Illova, supra* at 207. (Emphasis added.)

[20] *Ante* at 280, n 11.

outmoded rule, should we deviate from following the established rule. [*Parker v Port Huron Hosp*, 361 Mich 1, 10; 105 NW2d 1 (1960).]

This is not the "rare case when it is *clearly apparent* that an error has been made," but rather one where the lead opinion simply disagrees with the decision in *Cooper* and ignores the basic principles underlying stare decisis. There is not a crisis of criminals terrorizing the people of this state after a federal prosecution for a drug or other offense. There has not been a factual change other than the failure of the United States Supreme Court to overrule *Bartkus* (in part because of the principles of stare decisis), a change that this Court explicitly in *Cooper* distanced itself from requiring.

As the United States Supreme Court recently stated in the context of the abortion debate:

> [T]he Court could not pretend to be reexamining the prior law with any justification beyond a present doctrinal disposition to come out differently from the Court of 1973. To overrule prior law for no other reason than that would run counter to the view repeated in our cases, that a decision to overrule should rest on some special reason over and above the belief that a prior case was wrongly decided. [*Planned Parenthood of Southeastern Pennsylvania v Casey*, 505 US 833, 864; 112 S Ct 2791; 120 L Ed 2d 674 (1992).]

The lead opinion does not state a "special reason" for overruling *Cooper*. It does not discuss the strong scholarly opposition to the dual sovereignty doctrine in *Bartkus*, or other states' decisions that explain the flaws in the dual sovereignty doctrine, or this Court's decisions that have consistently reaffirmed *Cooper*. The lead opinion simply states without support that

this Court did not give proper deference to federal decisions, and then proposes to overrule *Cooper*. This is nothing more than a "belief that a prior case was wrongly decided."

The lead opinion's approach is troublesome. It undermines the authority of this Court. As Justice O'Connor observed:

> The Court must take care to speak and act in ways that allow people to accept its decisions on the terms the Court claims for them, as grounded truly in principle, not as compromises with social and political pressures having, as such, no bearing on the principled choices that the Court is obliged to make. Thus, the Court's legitimacy depends on making legally principled decisions under circumstances in which their principled character is sufficiently plausible
> . . . .
>
> There is a limit to the amount of error that can plausibly be imputed to prior courts. If that limit should be exceeded, disturbance of prior rulings would be taken as evidence that justifiable reexamination of principle had given way to drives for particular results in the short term. The legitimacy of the Court would fade with the frequency of its vacillation. [505 US 865-866.]

While Justice O'Connor's decision in *Planned Parenthood* has been criticized by some, her articulation of the principles underlying the doctrine of stare decisis and the obligation of an appellate court to overrule its prior decisions only after careful and thoughtful deliberation producing a strong conviction that the prior case was wrongly decided, only when there is a "compelling" reason to abandon the prior decision, is legally sound. To overrule precedent of this Court with so little evaluation of the costs and benefits of the established rule would be a lamentable departure from the rule of law.

The concerns addressed by this Court in *Cooper*
and *Gay*, as well as those stated in judicial opinions
in other states and scholarly writings, remain. The
right against being put twice in jeopardy is a personal
right that would be impinged by successive federal
and state prosecutions. This right must give way
when the prosecutions serve significantly different
ends. But unless the subsequent state prosecution is
shown to meet the test set forth in *Cooper*, the indi-
vidual's right to protection from further governmental
prosecution should prevail. Nothing has occurred fac-
tually or jurisprudentially to change the fundamental
impolicy of successive prosecutions. Until it can be
shown otherwise, we should continue to follow
*Cooper*.[21]

III

The lead opinion states, in the *Mezy* case, "Jeop-
ardy does not attach to charges dismissed as part of a
plea agreement."[22]

We would agree that if a defendant withdraws a
guilty plea and the prosecutor seeks to reinstate the
original charges, jeopardy has not attached to the
original charges.[23] If, however, a plea is accepted and

---

[21] Because this Court is remanding these cases for evaluation under the
statute, the trial court might reevaluate its decision under *Cooper*, but
need not do so. Its conclusion that Michigan's interests were not vindi-
cated by the federal prosecution remains an open question that this Court
has not addressed. As we see it, this Court is remanding the cases for
evaluation under the statute without prejudice to the parties' arguments
under *Cooper*.

[22] *Ante* at 276.

[23] *United States v Baggett*, 901 F2d 1546, 1550 (CA 11, 1990), held that
"the double jeopardy clause [does not] bar[ ] prosecution for counts dis-
missed as a result of a subsequently withdrawn plea bargain."

accompanying counts are dismissed *with prejudice*, other considerations come into play.

The lead opinion's reference to a federal "rule" overstates the law. Courts that have adopted this "rule" have stated it in passing, such as in the footnotes cited by the lead opinion,[24] or, when in the main body of the opinion, in cases where the discussion is not critical to resolution of the issue before the Court.[25] The cases cited by the lead opinion are thus

---

[24] *United States v Garner*, 32 F3d 1305, 1311, n 6 (CA 8, 1994), cited by the lead opinion, states, "Even if the double jeopardy did apply, Garner's claims are without merit." The court's opinion did not depend on this resolution, and the degree of analysis reflects its lack of importance in that case. Similarly, *United States v Soto-Alvarez*, 958 F2d 473, 482, n 7 (CA 1, 1992), simply cites *United States v Garcia-Rosa*, 876 F2d 209, 235 (CA 1, 1989), in which the court explained what the defendant was *not* arguing. The defendant there "concede[d] that his guilty plea on counts two and five of the 1985 indictment did not cause jeopardy to attach with respect to the dismissed counts of that indictment." The First Circuit thus "adopted" this rule in a case where it was not contested. The court did refer, in n 21, to *United States v Vaughan*, 715 F2d 1373 (CA 9, 1983), and *Fransaw v Lynaugh*, 810 F2d 518, 524-525 (CA 5, 1987), where the United States Court of Appeals for the Fifth Circuit wrote, "The cases hold with apparent unanimity that *when defendant repudiates the plea bargain,* either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle to restoring the relationship between defendant and state as it existed *prior to* the defunct bargain." (Emphasis added.)

[25] *United States v Dahlstrum*, 655 F2d 971, 974 (CA 9, 1981), is cited in *Vaughan*, n 24 *supra* at 1376-1377, for the proposition that a "dismissal is not equivalent to an acquittal even if dismissal is 'with prejudice.' " *Dahlstrum* actually holds that a judge's characterization of a dismissal as one with prejudice does not control where the basis for the dismissal is actually the court's finding of " 'governmental misconduct.' " 655 F2d 974. Additionally, in *Dahlstrum*, the United States Court of Appeals for the Ninth Circuit noted that it was not relying "ultimately on the 'acquittal' of appellee," *id.* at 975, n 5, but on "[a]ppellee's involvement in the termination of the trial was at best minimal[.]" *Id.* at 975. *Vaughan* also relied on *United States v Barker*, 681 F2d 589 (CA 9, 1982), which held that the government could reinstate charges of first-degree murder and conspiracy to commit murder after the defendant successfully had her plea to second-degree murder set aside. See *id.*, 715 F2d 1377. *Vaughan*, the only case cited in the lead opinion where the facts might be seen as somewhat

not on point, nor are the cases cited by the cases cited in the lead opinion.

Section 7409 literally speaks only of "a conviction or acquittal under federal law," and thus is subject to the construction that a dismissal with prejudice of a federal prosecution, not being either a "conviction or acquittal," is not a bar to prosecution in this state.

The literal, or as it is sometimes stated, the "plain meaning" of a statute is often held to be the correct construction of legislative intent. But in other cases, this Court has looked beyond the literal meaning to the spirit of the statute for guidance to the correct construction. "Few words have a 'content so intrinsic' that their meaning does not become doubtful in the context of a particular question." *People v McFarlin,* 389 Mich 557, 563; 208 NW2d 504 (1973), where this Court held that a statute providing that the disposition of a child, under the chapter of the probate court concerning juveniles, shall not in any "criminal or any other cause or proceeding whatever" be evidence against the child "for any purpose whatever," does not bar a judge from considering an adult offender's juvenile offense record as a factor in imposing sentence upon him. Since the lead opinion does not recognize and discuss the issue as one of statutory construction, there is no need to further respond in this regard. See also *Lawrence v Toys R Us,* 453 Mich 112; 551 NW2d 155 (1996), where this Court today similarly departs from a literal or "plain meaning" in construing the worker's compensation act.

---

analogous, relied on cases which stood for far different propositions than what the Ninth Circuit claimed for them.

And while it is certainly doubtful whether a dismissal of a federal charge as part of a plea bargain can be seen as having occurred after the accused was in jeopardy, there are other constitutional principles, particularly the Due Process Clause, that might bar a state prosecution, following dismissal of a federal charge as part of a plea bargain, for essentially the same reasons that this Court concluded in *Cooper* that multiple prosecutions by both the state and the federal government is unnecessarily onerous and to be avoided except in compelling circumstances not present in the instant cases.

CAVANAGH and MALLETT, JJ., concurred with LEVIN, J.