# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 5, 2015

v

JEFFREY THOMAS MAZUR,

Defendant-Appellant.

No.  317856
Wayne Circuit Court
LC No.  11-010106-FH

Before:  TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

It is undisputed that defendant secretly placed a "camera pen" capable of video and audio recordings in the private bedroom of the 17-year-old daughter of defendant's girlfriend, capturing naked and partially-clad images of the teen; the girlfriend owned and defendant resided in the house where this occurred.  A jury found defendant guilty of violating MCL 750.539d(1)(a), which provides that a person shall not "[i]nstall, place, or use in any private place, without the consent of the person . . . entitled to privacy in that place, any device for observing, recording, transmitting, photographing, or eavesdropping upon the sounds or events in that place."  The jury also found defendant guilty of violating MCL 750.539j(1)(b), which provides that a person shall not "photograph, or otherwise capture or record, the visual image of the undergarments worn by another individual, the unclad genitalia or buttocks of another individual, or the unclad breasts of a female individual under circumstances in which the individual would have a reasonable expectation of privacy."  Both § 539d and § 539j contain an identical provision indicating that these sections "do[] not prohibit security monitoring in a residence if conducted by or at the direction of the owner or principal occupant of that residence unless conducted for a lewd or lascivious purpose."  MCL 750.539d(2); MCL 750.539j(4).  Defendant appeals the convictions as of right, arguing that the convictions were against the great weight of the evidence, given that the evidence showed that he was a "principal occupant" of the home and thus authorized to monitor his girlfriend's daughter's bedroom through use of the camera pen, where he did so solely for legitimate security-monitoring reasons, not lewd or lascivious reasons.  Defendant also contends that there was insufficient evidence to support the convictions, primarily for the same reasons given in support of his great-weight argument.  Defendant finally maintains that he was denied a fair trial on the basis of prosecutorial misconduct.  We affirm the convictions.

Initially, we note the importance of understanding some procedural aspects that have a bearing on our analysis.  The issues regarding whether defendant qualified as a "principal

-1-

occupant" of the home and, if so, whether he employed the camera pen for a "lewd or lascivious purpose" instead of for the purpose of monitoring the home's security were left to the jury to determine and resolve. The trial court instructed the jury on the elements of each offense on the basis of language in the statutes (there is no standard M Crim JI), after which, consistent with MCL 750.539d(2) and MCL 750.539j(4), the court instructed the jury as follows:

> If you find that under all the facts and circumstances of this case that the camera was placed in [the victim's] bedroom for the purpose of security monitoring and was done at the direction of the owner or principal occupant of that residence, unless conducted for a lewd or lascivious purpose, you must find the Defendant not guilty.

The trial court did not provide definitional instructions regarding any of the language in the above-quoted instruction, nor did the court speak to the issue of the evidentiary burden of proof relative to the instruction.[1] Defendant expressly voiced approval of the jury instructions and does not claim any instructional error on appeal. The verdict form was, as standard for a criminal case, a general verdict form that simply allowed the jury to express whether defendant was guilty or not guilty of each charge. Under these circumstances, it is impossible for us to discern whether the jury, in finding defendant guilty of both charges, concluded that defendant was not a "principal occupant" of the home, making it unnecessary for jurors to reach the lewd or lascivious versus security-monitoring question, or whether the jury found that defendant was a principal occupant, in which case the jurors must have decided that defendant used the camera pen for a lewd or lascivious purpose and not a security-monitoring purpose.[2] Stated a bit differently, to convict defendant of the offenses under the instructions as given to the jury, there had to be sufficient proof that defendant *either* was not a principal occupant of the residence *or* that he engaged in the conduct at issue for lewd or lascivious as opposed to security-monitoring

---

[1] The exception found in both MCL 750.539d(2) and MCL 750.539j(4), which exception actually contain an exception to the exception ("unless conducted for a lewd or lascivious purpose"), does not indicate which party has the burden of proof as to any component of the exception; there is no reference to the exception as being an "affirmative defense." "[S]hifting the burden of proof goes to the heart of the judicial process[,]" and we "will not infer a change in the burden of proof without express statutory language to that effect." *People v Rios*, 386 Mich 172, 175; 191 NW2d 297 (1971). Ultimately, for purposes of this opinion, we shall proceed on the assumption that the prosecution had the burden of proof with respect to the exception in MCL 750.539d(2) and MCL 750.539j(4).

[2] While speculative, we tend to believe that the jury spent little if any time on the "principal occupant" question framed by the instruction, considering that the closing arguments focused almost exclusively on the issue of whether defendant used the camera pen to monitor security in the residence or did so for lewd or lascivious reasons. The instruction and the exception in MCL 750.539d(2) and MCL 750.539j(4) actually leave open a third possibility of guilt – that defendant was a principal occupant, and while his actions did not serve a lewd or lascivious purpose, he also did not use the camera pen to monitor security (a nosy defendant). However, the evidence and arguments focused on lewd or lascivious versus security monitoring, and our opinion will be couched in those terms.

reasons. But, ultimately, we have no way of telling which finding the jury made; perhaps the jurors even concluded that defendant was not a principal occupant and that, regardless, he employed the camera pen for a lewd or lascivious purpose. If we were to accept defendant's argument that reversal is warranted on the basis that there was inadequate evidence showing, under a great-weight or insufficiency theory, that he was not a principal occupant of the home, we conceivably would be reversing on a ground upon which the jury actually found in defendant's favor.

Analytically, with respect to the exception found in both MCL 750.539d(2) and MCL 750.539j(4) and within the framework of this case, it allows for a conviction under alternate theories or bases, i.e., that defendant was not a principal occupant, depriving him of any authority to deploy the camera pen even for security reasons, or that he used the camera pen for a lewd or lascivious purpose and not a security purpose. And this Court recently addressed a comparable issue in *People v Chelmicki*, 305 Mich App 58; 850 NW2d 612 (2014). In *Chelmicki*, the defendant was convicted of unlawful imprisonment, MCL 750.349b, which allows for a conviction where, as pertinent to the charges in *Chelmicki*, the defendant knowingly restrains another person *either* by means of a weapon or dangerous instrument *or* in order to facilitate the commission of another felony. *Chelmicki*, 305 Mich App at 64-65, quoting MCL 750.349b(1)(a) and (c). The defendant argued that there was insufficient evidence with respect to both circumstances (restraint by a weapon or dangerous instrument and restraint to facilitate a felony), and the *Chelmicki* panel declined to address whether there was sufficient evidence of restraint by means of a dangerous instrument, as there was sufficient evidence of restraint to facilitate the commission of another felony, arson. *Chelmicki*, 305 Mich App at 65. In a footnote, this Court explained why it was unnecessary to reach both bases or theories of the unlawful-imprisonment conviction, either of which could have served to support the conviction:

> If there was any deficiency regarding the sufficiency of the evidence of restraint by means of a weapon or dangerous instrument under subsection (1)(a), it was evidentiary in nature and went to the issue of whether restraint was actually accomplished through use of the BB gun, when the victim testified that she knew the BB gun was broken, unloaded, and could not hurt her, and physical force was used to restrain the victim. Accordingly, we find that our ruling does not offend *Griffin v United States*, 502 US 46; 112 S Ct 466; 116 L Ed 2d 371 (1991) (discussing due process concerns in the context of a general verdict with alternative bases of criminal liability and the sufficiency thereof). [*Chelmicki*, 305 Mich App at 65 n 1.]

A concise and accurate statement of the principles that emanated from the United States Supreme Court's decision in *Griffin* was set forth in *United States v Garcia*, 992 F2d 409, 416 (CA 2, 1993), wherein the Second Circuit explained:

> [T]he teaching of *Griffin* is that when disjunctive theories are submitted to the jury and the jury renders a general verdict of guilty, appeals based on evidentiary deficiencies must be treated differently than those based on legal deficiencies. If the challenge is evidentiary, as long as there was sufficient evidence to support one of the theories presented, then the verdict should be affirmed. However, if the challenge is legal and any of the theories was legally insufficient, then the verdict must be reversed. [See also *United States v Tomblin*,

-3-

46 F3d 1369, 1385-1386 (CA 5, 1995), and *United States v Self*, 2 F3d 1071, 1092-1093 (CA 10, 1993).]

The reason for treating an evidentiary deficiency claim different than a legal deficiency claim "is that jurors can, from their own experience, weed out evidentiary deficiencies, but not legal insufficiencies." *Tomblin*, 46 F3d at 1385; see also *Self*, 2 F3d at 1093 ("factual insufficiency . . . does not require reversal as we will presume that the jury rejected the factually inadequate theory and convicted on an alternative ground for which the evidence was sufficient").

Here, defendant solely presents appellate arguments related to the weight and sufficiency of the evidence with respect to whether he was the "principal occupant" of the residence and in regard to whether he engaged in the conduct for a lewd or lascivious purpose or a security-monitoring purpose. These are not arguments pertaining to legal deficiencies, such as where, for example, a defendant contends that a court gave a legally-unsound instruction on the elements of an offense. Keeping in mind the analytical framework set forth above, we hold that there was sufficient evidence that defendant utilized the camera pen for a lewd or lascivious purpose and not to monitor security, that the great weight of the evidence did not preponderate heavily in the opposite direction, and that, in light of these conclusions, it is unnecessary to reach the issue regarding whether defendant was a principal occupant of the residence (alternate theory or basis for conviction).

The victim found the camera pen in a cup on a shelf in her room that was located at crotch level. The camera pen recorded footage of the teen's unclad buttocks, genital area, and breasts. Defendant initially denied putting the camera pen in the victim's bedroom when questioned by his girlfriend, and he moved out of the house when she asked him to leave. The girlfriend sent defendant a text message asking him why he put the camera pen in her daughter's bedroom, and, according to the girlfriend's testimony, defendant replied, " 'I have an addiction just like you have an addiction, I need help.' " Defendant also indicated in a different text message to the girlfriend that he realized that she could never forgive him and that he never intended to hurt anybody. In yet another text message, defendant accused his girlfriend of not "taking care" of him, which the girlfriend believed referred to their sexual relationship. There was also evidence of two occasions on which defendant was naked in the victim's presence, although defendant explained that he had been unaware of her presence. The victim also testified of an incident in which she observed defendant staring at her through a mirror while she was watching television in her room. Additionally, and most damaging for defendant, there was evidence, as gleaned from the recordings obtained and analyzed by the police, showing that on several occasions defendant placed the camera pen in the victim's room or physically adjusted the position of the camera pen just before, and in one instance 45 seconds before, it recorded naked images of the victim after she had entered her bedroom toweled following a shower. This evidence clearly reflected that defendant was monitoring the victim's actions with respect to bathing or showering in an effort to allow him the opportunity to employ the camera pen at maximum effect for purposes of obtaining footage of the teen naked and in various stages of undress. Stated otherwise, the evidence strongly indicated that defendant used the camera pen for a lewd or lascivious purpose and not for the purpose of monitoring security in the residence.

With respect to the sufficiency argument, viewing the direct and circumstantial evidence discussed above in a light most favorable to the prosecutor, appreciating that circumstantial

evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of a crime's elements, and resolving all evidentiary conflicts in favor of the prosecution, we hold that there was sufficient evidence to show a lewd or lascivious purpose in regard to defendant's actions. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002); *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). To the extent that defendant testified that he did not act with a lewd or lascivious intent but only acted for security reasons in response to inappropriate behavior by the victim in relation to drug and alcohol use, missing items in the home, and other alleged misdeeds, we defer to the jury's assessment of witness credibility. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). With respect to defendant's claim that he did not actually view the recordings, a police officer testified that he could not tell whether the recordings had been viewed by defendant. The officer also testified that it appeared that several recordings had been deleted or were missing. Regardless, neither § 539d nor § 539j require a defendant to view the recorded material and, assuming that defendant did not view the recordings, it does not undermine our conclusion that the evidence adequately showed that he used the camera pen for a lewd or lascivious purpose. Moreover, the jury was free to reject defendant's claim that he had not viewed the recordings.

With respect to defendant's great-weight argument, the evidence regarding the purpose behind defendant's actions in deploying the camera pen did not preponderate heavily against the verdict, such that a miscarriage of justice would occur absent reversal. *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). The evidence showing that defendant acted with a lewd or lascivious purpose did not contradict indisputable physical facts, was not patently incredible, and was not inherently implausible. *Id.* There was strong evidence, recited earlier, that defendant used the camera pen for a lewd or lascivious purpose, as opposed to employing the camera pen for a security-monitoring purpose. Reversal is unwarranted.

Finally, defendant argues that the prosecution committed misconduct when it interfered with defendant's girlfriend's employment and otherwise generally harassed her in an overly-aggressive effort to have her testify against defendant and in favor of the prosecution. Defendant's girlfriend had reconciled with him before trial. Assuming the record supported the factual predicate for defendant's argument on harassment, which it does not, the girlfriend ultimately testified in a manner that lent support, as best she could, to defendant's position that he did not use the camera pen for a lewd or lascivious purpose but rather to address her daughter's behavioral problems. Defendant has not even alleged prejudice, let alone established that any misconduct affected the outcome of his trial. Assuming misconduct, defendant was not denied a fair and impartial trial, *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007), and the misconduct constituted harmless error, *People v Mezy*, 453 Mich 269, 285-286; 551 NW2d 389 (1996) (applying harmless-error rule to claim of prosecutorial misconduct).

Affirmed.

/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher

-5-